HENRY P. STARR v. SOUTHERN BELL TELEPHONE AND
TELEGRAPH COMPANY.

(Filed 1 November, 1911.)

1. Telegraphs—Telephones—Electricity—Dangerous Instrumentality
—Wires—Care Required—Negligence—Electric Storms.

A telephone company having taken its instrument from a house
of a subscriber, left the loose ends of the wire fastened together
hanging from the porch plate, without "grounding" and without
a lightning arrester. During an electric storm plaintiff was stand-
ing near these ends of the wire and was struck with and in-
jured by electricity: *Held*, evidence sufficient for the jury to
find that the negligence of the telephone company caused the
injury, without testimony of an eye-witness to the effect that he
saw the discharge of the lightning leap from the wires and
strike the plaintiff.

2. Electricity—Storms—Metal Wires—Conductivity—Effect—Courts
—Judicial Knowledge.

The courts may take judicial knowledge of well known and
established facts, and it was not error for the judge to instruct
the jury, upon the evidence introduced, that metal is a good
conductor and that it will attract lightning which forms in elec-
trical storms, and carry it to the earth; that the human body
is a better conductor than the air, and when sufficiently near
to the ends of wires strongly enough charged with electricity,
the current will leap through the body to the ground, etc.

APPEAL by defendant from *O. H. Allen, J.*, at August Term,
1911, of GUILFORD.

The facts are sufficiently stated in the opinion of the Court
by *Mr. Chief Justice Clark.*

*R. C. Strudwick and W. P. Bynum for plaintiff.*

*H. E. W. Palmer, Brutus J. Clay, and Wilson & Ferguson
for defendant.*

CLARK, C. J.    The defendant removed a telephone from the
plaintiff's house, but for its own convenience left the wires lead-
ing into plaintiff's porch still connected with its general system
of wires and with the loose ends twisted together and hanging
down 6 or 8 inches from the plate of the porch.    At the same
time the defendant removed the lightning arrester and severed

the ground connection of the said wires. There was evidence that the wires left in this condition were dangerous on account of the means thus afforded of their conducting lightning which might strike any part of the defendant's general system of wires, into the house, and that the plaintiff was unaware of this danger, but relied upon the defendant to leave the wires in a safe condition.

One afternoon in June, 1909, the plaintiff was sitting on his porch under said wires when a storm, accompanied by thunder and lightning, came up. The plaintiff arose to go into his house, and as he stood up, the ends of said wires being about 18 inches from and to the left of his head, there came a violent clap of thunder and a ball or bolt of lightning struck him on the left and back of his head, which the plaintiff claims came from the ends of said wires, rendering him unconscious and seriously injuring him. The jury found that said injuries were caused in this mode and by the negligence of the defendant.

The defendant's chief contention is that the court erred in not granting the motion to nonsuit the plaintiff. But we think not. The matter was peculiarly one of fact, and was for the jury to determine. It is true, no one saw the discharge of the lightning leap from the wires and strike the plaintiff on the left and back of his head. But the evidence justified the jury in finding such to be the fact. When one fires a pistol at another no one sees the ball strike the body, but the pointing the pistol within proper distance, its discharge and the wound are evidence from which the jury can infer the cause of the wound.

In dealing with this dangerous agency of electricity, if the defendant left its wires for its own convenience hanging in the plaintiff's porch, it was negligence for which it was liable if the injury of the plaintiff was caused, as the jury finds, by lightning striking on its wires and being discharged against the plaintiff thereby. Especially is this so, when the defendant was guilty of the further negligence of taking off the lightning arrester and severing the ground connections.

In a case almost identical in the facts with the present, *Telephone Co. v. McTyer,* 137 Ala., 601, the Court said: "The only justification for the wires being carried into a building and maintained there is the telephone service thus supplied by means of them. If they are put there not for that purpose, but for the mere convenience of the telephone company, and allowed to be in such condition as that persons and property in the building are liable to be injured by lightning gathered and brought into the building by them and there discharged, their mere presence is a wrong. So, when they were originally carried into the building, and equipped and maintained to supply the service to the owner, but at his instance 'the service has been discontinued and the instruments removed, and the company, instead of then removing the wires, merely cuts them loose from the instrument, twists their ends together, and leaves them thus dangling in the building, so that atmospheric electricity striking them anywhere along their course on the outside will be inducted into the building, and there discharged to the peril of persons and property, *this is an unpalliated wrong* on the part of the company. It is the creation and maintenance of a dangerous situation without that warranting occasion for it which may exist when the wires are in use— without any occasion whatever, in fact; and the company is liable in damages for whatever injuries may result to persons and property on the premises."

And further the Court said: "In view of the known capacity of these wires to collect and carry dangerous currents of atmospheric electricity into the store and there discharge them, to the deadly peril of persons in there at the time, and in view of the total absence of any occasion for the wires to be left there at all, there can, in our opinion, be no doubt that the company owed a plain duty not only to Thomas, but also to his customers, to remove the wires, and thereby to obviate this peril to him and to them. Nor was there any excuse for its failure to perform this duty. Its remission of it was a positive wrong, committed by defendant's servant who removed the telephone and twisted up and left the wires. No man of ordinary

care and prudence would have so acted. There is not room for two reasonable conclusions as to the character of the act in respect of negligence *vel non*. It was negligence *per se,* and to be so declared as matter of law."

The defendant also excepts because the judge charged the jury: "Then, as I said, there are some well-known facts that may be considered in the same way as if they had been testified to. It is a well-known fact, for instance, that lightning in times of storms is frequently discharged from the clouds and passes to the earth, and that metal wires in the air are good conductors of electricity, much better than the air, and that electricity discharging from the clouds near such wires is liable and apt to pass on them and along them to the earth, and that if a human body, which is also a good conductor, is in contact with a wire charged with electricity, it will pass through it to the ground; or if near it, if the charge is strong enough, it is likely to seek it and pass to the ground, the human body being a better conductor than air. Therefore, it is the duty of one engaged in a business which requires the dealing with metal wires to use every reasonable precaution to protect any one likely to come in contact with or near to the same; and so when the defendant was ordered to remove this telephone, and when it did remove it from the house of the plaintiff, it was its duty to remove the same and leave it in a reasonably safe condition, if it left any part of the wire attached to the house. So an important inquiry is whether the wire was left in a reasonably safe condition, or did the defendant leave it in a dangerous condition."

This was not an expression of opinion, but the statement of facts generally known. What is a matter of common knowledge to every one else should certainly be matter within the knowledge of a court and of which it can take judicial notice.

No error.