This is an action for actionable negligence instituted by plaintiff against defendant alleging damage.
The following seven allegations of the complaint are admitted by defendant:
"2. That plaintiff is a resident of Warren County, North Carolina, and is an infant 20 years of age, who appears herein by her duly appointed, qualifying and acting next friend, Beulah B. Lynch.
3. That on 24 June, 1930, defendant furnished for its customary charges telephone service in the dwelling of F. B. Lynch, in Warren County, where plaintiff made her home as a regular member of the family.
4. That as a part of the equipment necessary to furnishing such service in said Lynch home the defendant maintained a wire known as a ground wire, which consisted of a wire running from a certain point in the house to a metal rod driven into the ground outside of the house.
5. That a properly connected ground wire is a part of the usual and customary equipment at each dwelling where telephone service is maintained.
6. That for reasons for protection from lightning a properly connected ground wire is necessary at each dwelling where telephone service is maintained.
7. That at said Lynch dwelling on 24 June, 1930, and for several months prior thereto there was no lightning arrester other than a ground wire at said Lynch dwelling. *Page 254 
8. That unless the telephone apparatus at a dwelling is properly maintained, lightning may be conducted into such dwelling by striking other parts of defendant's general system of wires."
The plaintiff further alleges:
"9. That on 24 June, 1930, and for several months prior thereto defendant negligently and carelessly maintained at said Lynch dwelling an insufficient and improper ground wire, with full knowledge thereof from August, 1929, until 24 June, 1930.
10. That after a severe ball or bolt of lightning had entered said dwelling during the month of August, 1929, upon which occasion the telephone in said dwelling was wrecked, defendant's agent and employee inspected the ground wire connection, pronounced same wholly inadequate and unsafe and pretended to repair same, stating that such repair was temporary and would be made permanent and thoroughly safe at an early date.
11. That plaintiff and the other members of said Lynch home were wholly unfamiliar with matters of electricity and relied implicitly upon defendant's said agent and employee to protect them from the dangers of improperly grounded telephone apparatus; that plaintiff and said family exercised no control over said apparatus, both on account of their ignorance and defendant's control.
12. That said telephone, telephone apparatus and ground wire were carelessly and negligently allowed by defendant to remain in said unsafe, improper and insufficient condition in utter disregard for the safety of the occupants of said dwelling and with negligent, heedless, careless, reckless, and wanton disregard and indifference for their lives and property; that during the said period from August, 1929, until 24 June, 1930, plaintiff's life and well-being, as a result of defendant's said negligence were wholly at the peril of powerful balls and bolts of lightning and chance.
13. That on 24 June, 1930, at or about seven o'clock in the afternoon, while a thunderstorm was in progress, plaintiff passed within two feet of the telephone maintained as aforesaid; that upon reaching a point two feet therefrom plaintiff was struck on the right side of her head by a ball or bolt of lightning and rendered unconscious thereby, said ball or bolt of lightning having entered said dwelling over said improperly maintained apparatus; that plaintiff remained unconcious for several hours, was so painfully shocked and injured that her life was despaired of throughout a large part of the night, her body became weak, cold, stiff, and numb, and her hearing lost in her right ear for several days.
14. That as a direct and proximate result of her said injuries, plaintiff at times becomes exceedingly nervous, weak, cold, numb and frightened, such spells lasting for an hour or more and periods of extreme *Page 255 
weakness lasting for a day or more; that plaintiff has become generally nervous and suffers during every thunderstorm paroxysms of fear, resulting in extreme nervousness, fright, discomfort and suffering, all of which conditions will follow plaintiff throughout her life and continuously cause her great pain, suffering, annoyance, embarrassment and humiliation.
15. That all of plaintiff's said injuries and conditions were and are proximately and directly caused by the negligence of defendant, hereinbefore set forth, she having been before her injuries a perfectly normal, healthy and happy girl.
16. That as a direct and proximate result of defendant's said negligence and its reckless and wanton disregard for plaintiff's safety, plaintiff has been damaged in the sum of ten thousand dollars."
Defendant in its answer says:
"10. That it is admitted that during the month of August, 1929, lightning entered the dwelling and damaged the telephone there located; the remainder of section 10 is untrue and is denied.
11. That this defendant has no knowledge or information as to the matters set forth in this section and therefore denies the same.
12. That section 12 is untrue and is denied.
13. That it is admitted that on or about 24 June, 1930, that plaintiff was struck by lightning and suffered some ill effects therefrom; the remainder of said section is untrue and is denied. And further answering this section the defendant avers that on this day an electrical storm of unusual intensity developed in and around the community; that in addition to the wires and equipment used in connection with the telephone there was located upon said house a system of lightning rods and nearby a lighting system and that wires from all of these ran upon and into said house and as this defendant is advised, believes and avers the lightning entered said house either from the lightning rods or the lightning system. And this defendant further avers that at times of unusual electrical disturbance lightning often enters a dwelling by means of wires therein located and damages the equipment notwithstanding the existence of a properly installed and maintained ground connection.
14. That section 14 is untrue and is denied.
15. That section 16 is untrue and is denied.
Wherefore, defendant prays that plaintiff take nothing by her action and that it recover its costs."
The issues submitted to the jury and their answers thereto, were as follows:
"1. Was the plaintiff injured by the negligence of the defendant as alleged in the complaint? Answer: Yes. *Page 256 
2. What amount, if any, is the plaintiff entitled to recover of the defendant? Answer: $5,000."
Judgment was rendered by the court below on the verdict. The defendant made numerous exceptions and assignments of error and appealed to the Supreme Court. The necessary facts and assignments of error will be set forth in the opinion.
The defendant abandons all of its exceptions and assignments of error except one and says that "the single question presented by this appeal is the correctness of the action of the trial court in overruling defendant's motion for judgment as in case of nonsuit, C. S., 567, at the close of plaintiff's evidence and at the close of all the evidence.
The plaintiff was injured during an electrical storm when within two feet of defendant's telephone installed in her home by receiving a shock caused by a discharge of lightning, which damaged the telephone and connecting equipment. The negligence of defendant consisted in its failure to have a type of ground connection such as was approved and in general use. The defendant's position is that there was no evidence that its negligence, if conceded, was the proximate cause of the injuries." We think the court below made no error in overruling defendant's motions.
The defendant in its brief states so well its position that we quote it: "The defendant concedes that it was fixed with knowledge that lightning might be conducted over its telephone wires to and into plaintiff's home and there do injury, and that it was its duty to provide all known and approved devices in general use for preventing such consequences and guarding against accidents from lightning. Defendant further concedes that plaintiff's case was sufficient to be submitted to the jury from the standpoint of whether or not the method of grounding used by defendant at plaintiff's home at the time of the accident was such as was approved and in general use, but defendant insists that plaintiff's case was fatally defective in that it failed to show any causal connection between the negligence and the injuries; that as to this essential element of actionable negligence the jury necessarily was left to guess and speculate, and that for this reason the motion for judgment of nonsuit should have been allowed. The defendant's position is based upon the principle, which we assume is not seriously questioned, that the evidence in an action for personal injuries resulting from negligence must show not only the negligence and the injuries but the causal connection between the two. We admit that generally the question of whether or not *Page 257 
the negligence was the proximate cause of the injury is a question of fact for the jury to determine, but take the position that there is a preliminary question for the Court to determine, that is, whether or not there is any substantial evidence upon which to base the finding by the jury, just as, while the question of whether or not the defendant was negligent is for the jury to find, it is for the court to determine whether or not there is any evidence of it."
The principle of law is well settled that the negligence must be the proximate cause of the injury — there must be a causal relation between the negligence and the injury. Byrd v. Express Co., 139 N.C. at p. 273; Pangle v. Appalachian Hall, 190 N.C. 833; Smith v. Wharton,199 N.C. 246; Denny v. Snow, 199 N.C. 773; Tuttle v. Bell, 203 N.C. at p. 154; Grimes v. Coach Co., 203 N.C. 605.
In Rountree v. Fountain, 203 N.C. at p. 383, where a nonsuit was granted, this Court said: "The plaintiff has the burden of establishing the proximate causal relation of the alleged negligence to the injury and death, and in his search for it he is led into the uncertain realm of conjecture."
The settled rule is that upon a motion as of nonsuit the evidence, whether offered by the plaintiff or elicited from defendant's witnesses, is to be considered in the light most favorable to the plaintiff, and he is entitled to every reasonable intendment thereon and every reasonable inference to be drawn therefrom.
Pattie P. Lynch, the injured girl, testified in part: "The telephone in question was connected to the wall about four feet from the floor, I expect. In passing from the bed room going towards the kitchen through the dinning room on the day in question, I had to pass within approximately two feet of the telephone in question. I recall going right near the telephone on that night and as I approached the telephone in that passageway, something like a sound hit me on the right side of the head and that is all I know."
F. B. Lynch, the father testified, in part: "The telephone was placed in my house on the customary basis of service. I had paid for the service twelve months in advance. I knew nothing about the telephone apparatus and relied upon the telephone company. I saw the bolt of lightning about 50 yards from the telephone line. I saw it on the wire that came in the house probably about 50 yards from the house. It was so quick I could not tell. I later observed the poles upon which these wires were strung and as much as a half a mile up the road from my house the poles were affected by the lightning, little pieces knocked off on the ground where the lightning came on down. At the time that Pattie was hurt, there was a tremendous explosion. It was worse than a *Page 258 
shot gun, something like a blasting at a stone quarry. The house was full of smoke and odor and every one in it was scared to death, not only excited about her, but scared naturally. The little piece of wire that came from the ceiling that was attached to the phone, was swealed (scorched or singed) and the ceiling in the house was smoked. The house was not damaged in any other way. By swealed, I mean swealed or smoked. It was not burnt or stained. It was swealed next to the telephone."
All the elements of actionable negligence can be proved by circumstantial as well as direct evidence. In the present case the evidence is to the effect that the injured girl was within two feet of the telephone "right near — something like a sound hit me on the right side of the head." The father testified that he saw the bolt on the telephone line about 50 yards on the wire that came into the house. "The little piece of wire that came from the ceiling that was attached to the phone was swealed." "It was swealed next to the telephone." One sees a smoking gun, hears the explosion and the gun is pointed in the direction of a man or a bird, the man or bird falls. One hears a hen cackle coming from a brush heap or hen house and on going to the brush heap or hen house one finds a warm egg. (There is an old saying "It looks like wisdom a hen never cackles until she lays an egg.") The evidence, though circumstantial, would be sufficient to be submitted to a jury to pass on.
The evidence on the part of plaintiff sustained the material allegations of the complaint. These were denied by defendant and its evidence sustained its contentions. The matter on all the ingredients of actionable negligence, including proximate cause, we think in this case there was sufficient evidence to be submitted to a jury to determine. The probative force is for them. The charge of the court below is not in the record and the presumption of law is to the effect that the court charged the law correctly applicable to the facts.
The liability of telephone companies is well stated in Jones, 2d ed. Telegraph and Telephone Companies, part sec. 198, p. 225, et seq.:
"Telephone companies should equip their telephones which they have installed in buildings with known and approved devices so as to prevent their wires from conducting lightning or excessive currents of electricity to or into said buildings; and, in the discharge of such duty, they must exercise the care of a prudent person under like circumstances, otherwise they will be liable to any one injured thereby. Consequently they will be liable for personal injuries to one using their instruments in the ordinary manner during an ordinary electrical disturbance, or from a discharge of electricity from wires to persons not actually coming in contact therewith. Furthermore, where so dangerous an agency as *Page 259 
electricity is undertaken to be delivered into houses by electrical companies for daily use, very great care and caution should be observed, and such a degree thereof as is commensurate with the danger involved, and which is enhanced by the lack of the consumer's knowledged of the safety of the means and appliances employed to effect the delivery. It is generally held that in case of injuries sustained from electric appliances on private property the doctrine of res ipsa loquitur applies where it is shown that all the appliances for generating and delivering the electric current are under the control of the person or company furnishing the same. So, also, the company will be liable if the injury results, not from a shock received from an excessive current of electricity, but because of the negligence of the electric company in not properly attaching its fixtures."
In 26 R. C. L., part sec. 40, "Telegraphs and Telephones," at p. 531-2, the following principle is laid down: "A duty is imposed upon telephone companies to adopt precautions for preventing charges of atmospheric electricity from entering buildings over their telephone wires; and if there are known and approved appliances or devices which may prevent injury to persons or property from the above cause, due care should be used in selecting, placing and maintaining the same to such extent as may be reasonably necessary and effective, and for failure to perform the duty imposed upon it in this respect the company may become liable for injury or death occasioned thereby, even though the person injured in such case was not using the telephone. Such wires should also be properly insulated where the company is bound to know that they could become the conductor of a deadly current heavily and dangerously charged; and if a person is injured by an electric current from a telephone on his premises, such fact of itself is evidence of negligence on the part of the company."
In Pearce v. Mountain States Tel. Tel. Co. (Colo.), 76 L.R.A., 1918-F, at p. 1105, the Court said, in part: "There was evidence that an excess current of electricity, induced by lightning, was conveyed over the telephone wires into plaintiff's building, setting it on fire. Defendant was bound to know that its wires might become charged with a dangerous current induced by lightning, which made it the duty of the company to use reasonable precaution to guard against fire. Because such excess current was produced by lightning makes no difference in defendant's liability, if it could have avoided the injury by exercising ordinary care and diligence. From the business in which defendant is engaged, it is presumed to possess special knowledge and skill in such matters, not possessed by laymen, which it was its duty to use for the protection of its patrons, no matter whether the current was generated *Page 260 
by it or produced by lightning. It was as much its duty to be diligent in affording protection against a current likely to come over the wires not generated by it, as a current it generated, and it could not escape this responsibility by pleading that the excess current was induced by lightning. No one was responsible for the lightning; but if defendant's faulty installation or management of the phone and its appliances was responsible for the excess current coming over the wires, entering the building and doing the damage, or if by the use of ordinary and reasonable care, precaution, and diligence it could have avoided the injury, it is responsible." Turner v. Power Co., 154 N.C. 131; Starr v. Telephone Co.,156 N.C. 435; Shaw v. Public-Service Co., 168 N.C. 611; McAllister v.Pryor, 187 N.C. 832; Elliott v. Comrs. of Lexington, 201 N.C. 838.
We think the principle on which this action was tried is well settled in this State. The evidence was sufficient to have been submitted to the jury on the question of actionable negligence. The question of proximate cause was for the jury to determine. There is no evidence of an intervening cause that produced the injury. In law we find
No error.