W. F. INGOLD v. CAROLINA POWER & LIGHT COMPANY

No. 715SC330

(Filed 26 May 1971)

1. Electricity § 5— fall of power lines — negligence

Plaintiff's evidence was sufficient to show that power lines owned and maintained by defendant power company fell as a result of specific acts of negligence on the part of defendant.

2. Negligence § 8— proximate cause

In order for an act of negligence to be considered a proximate cause of an injury, a plaintiff must prove a causal relationship between the act and the injury.

**3. Evidence § 3— judicial notice**

A court may take judicial notice of a fact within a field of any particular science which is so notoriously true as not to be the subject of reasonable dispute or is capable of demonstration by resort to readily accessible sources of indisputable accuracy.

**4. Electricity § 5— fallen electrical wires — shock to train engineer — proximate cause**

Evidence of plaintiff railroad engineer failed to show that fallen electrical wires owned and maintained by defendant power company were a proximate cause of an electrical shock received by plaintiff when he grasped the brake handle of the diesel engine he was operating at about the time the wires fell.

APPEAL by plaintiff from *Fountain, Judge,* 10 November 1970 Session of Superior Court held in NEW HANOVER County.

Plaintiff filed complaint on 5 January 1967 alleging that he was injured by an electric shock on 9 January 1964 while employed as a fireman-engineer for the Seaboard Airline Railroad. The shock allegedly occurred when power lines owned and maintained by defendant fell to the ground during a rain storm and near the track on which plaintiff was operating a diesel engine in the course of his employment. At one place in the record it is indicated the voltage carried by the lines was 12,000 volts. Another part of the record indicates the voltage as having been 1200 volts.

At the conclusion of plaintiff's evidence defendant moved for a directed verdict pursuant to Rule 50 of the Rules of Civil Procedure (G.S. 1A-1, Rule 50). Two grounds for the motion were specified: "First, that the evidence does not disclose that the defendant was guilty of any negligence as alleged in the complaint; and second, that the evidence does not disclose that the wire on the ground was the proximate cause of any shock received by Mr. Ingold."

Defendant's motion was allowed and plaintiff appealed.

*Stevens, McGhee, Ryals & Aycock by Karl W. McGhee and Rives, Peterson, Pettus, Conway & Burge by W. Eugene Rutledge for plaintiff appellant.*

*Poisson, Barnhill & Jackson by L. J. Poisson, Jr., Thomas E. Capps and Sherwood H. Smith, Jr., for defendant appellee.*

---

Ingold v. Light Co.

---

GRAHAM, Judge.

In determining the sufficiency of the evidence to withstand a motion for a directed verdict made by a defendant under the provisions of Rule 50, we are guided by the same principles that prevailed under our former procedure with respect to motion for nonsuit. *Kelly v. Harvester Co.,* 278 N.C. 153, 179 S.E. 2d 396; *Musgrave v. Savings & Loan Assoc.,* 8 N.C. App. 385, 174 S.E. 2d 820. All evidence which supports plaintiff's claim must be taken as true and considered in the light most favorable to plaintiff, giving him the benefit of every reasonable inference which may legitimately be drawn therefrom, and with contradictions, conflicts and inconsistencies being resolved in plaintiff's favor. *Bowen v. Gardner,* 275 N.C. 363, 168 S.E. 2d 47, and cases therein cited.

The burden was upon plaintiff to produce evidence, either direct or circumstantial, sufficient to establish the two essential elements of actionable negligence, namely: (1) that defendant was guilty of a negligent act or omission; and (2) that such act or omission proximately caused his injury. *Sowers v. Marley,* 235 N.C. 607, 70 S.E. 2d 670.

[1] Plaintiff undertook to prove that the power lines fell as a result of specific acts of negligence on the part of defendant. We feel it unnecessary to set forth the evidence bearing on this question. Suffice to say, in our opinion, plaintiff's evidence was sufficient to withstand a motion for a directed verdict made on the ground "the evidence does not disclose that the defendant was guilty of any negligence. . . . " See *Kekelis v. Machine Works,* 273 N.C. 439, 160 S.E. 2d 320; *Murphy v. Power Company,* 196 N.C. 484, 146 S.E. 204; *Ellis v. Power Co.,* 193 N.C. 357, 137 S.E. 163; *McAllister v. Pryor,* 187 N.C. 832, 123 S.E. 92; *Shaw v. Public-Service Corporation,* 168 N.C. 611, 84 S.E. 1010; *Turner v. Power Co.,* 154 N.C. 131, 69 S.E. 767.

[2] Whether there was any evidence that the fallen wires were a proximate cause of the shock received by plaintiff is a more difficult question. In order for an act of negligence to be considered a proximate cause of an injury, a plaintiff must prove a causal relationship between the act and the injury. *Reason v. Sewing Machine Co.,* 259 N.C. 264, 130 S.E. 2d 397; *Wall v. Trogdon,* 249 N.C. 747, 107 S.E. 2d 757.

Taking plaintiff's evidence in the light most favorable to him, we must accept as true his testimony that he received a shock when he grasped the brass brake handle of the diesel engine and that the shock occurred at about the time the wires in question fell. However, plaintiff's evidence also showed that the poles supporting the wires were located, by exact measurement, 29 feet from the nearest track rail. The wires fell straight down onto the ground and bushes in line with the poles and approximately 27 feet from the nearest rail. They did not come in contact with the diesel engine or the track on which it was being operated. We find no evidence that anything which the wires came in contact with could have conducted the electricity to the engine and its brake handle, or that the electricity could have arced or "jumped" that distance.

The theory of plaintiff's complaint appears to be that the electricity was conducted along the ground. "[S]uddenly and without warning the power lines of the defendant company adjacent to the railroad track broke, fell to the ground and thus conducted into the body of plaintiff tremendous voltage of electricity. . . . " Also, " . . . Carolina Power & Light Company . . . attempted to perform temporary repairs on said cable which it knew . . . would not be suitable and safe, but would be subject to breakage without undue strain, and thus conduct *onto the ground* large voltage of electricity. . . . " (Emphasis added). However, the record contains no evidence that the ground conducted the electric current the 27-foot distance from the fallen wire to the diesel engine or that it was capable of doing so.

[3] A court may take judicial notice of a fact within a field of any particular science which is so notoriously true as not to be the subject of reasonable dispute or is capable of demonstration by resort to readily accessible sources of indisputable accuracy. *Kennedy v. Parrott,* 243 N.C. 355, 90 S.E. 2d 754; *Hopkins v. Comer,* 240 N.C. 143, 81 S.E. 2d 368; Stansbury, N. C. Evidence 2d, § 11. Under this principle it may be noted that wire or metallic substances will conduct electricity, whereas string ordinarily will not. *Pugh v. Power Co.,* 237 N.C. 693, 75 S.E. 2d 766. It is also generally known that "if a human body, which is also a good conductor, is in contact with a wire charged with electricity, it will pass through it to the ground; or if near it, if the charge is strong enough, it is likely to seek it and pass to the ground, the human body being a better conductor

than air." *Starr v. Telephone Co.,* 156 N.C. 435, 72 S.E. 484.

In our opinion, however, it would be pure speculation to hold, in the absence of evidence, that the ground is a sufficient conductor of electricity to conduct it a distance of 27 feet, and then through or over wooden cross ties to the rails, and finally to the diesel engine and its brake handle. Such a conclusion is rendered even more speculative in view of the fact the cab of the engine was insulated. This is shown by the uncontradicted testimony of one of plaintiff's witnesses that "If a line had fallen across the train, the crew would have been safe in the cab. . . . "

The only evidence of a scientific nature relating to the conduct of electricity was the testimony of plaintiff's witness, Lloyd F. Cox. He testified that when a wire comes down and lies on the ground, the electricity in the wire "goes the nearest route to the ground, nearest thing that it touches to ground compared to least resistance." What happens to electricity after it goes to the ground is not shown.

In *Hanrahan v. Walgreen Co.,* 243 N.C. 268, 90 S.E. 2d 392, plaintiff testified that each time she used defendant's hair rinse her scalp became irritated. She had never had this trouble before. After using the rinse a third time she consulted a physician who found she had dermatitis of her entire scalp. In sustaining a judgment of nonsuit Justice Parker (later Chief Justice) stated: "It may be that there was a poisonous substance in the hair rinse, but there is no evidence to support such a conjecture."

It may be that in this case the electricity was conducted 27 feet along the ground to the engine, but there is no evidence to support such a conjecture.

On oral argument plaintiff's counsel suggested that the bushes and undergrowth, especially when wet, could have furnished the path along which the electricity traveled to the engine. Perhaps this is true. But the evidence fails to connect the bushes to the engine or the track. Furthermore, to so hold would be to speculate about a highly technical and scientific principle on which there has been no evidence.

Plaintiff argues that the case of *Lynch v. Telephone Co.,* 204 N.C. 252, 167 S.E. 847, is controlling on the question of causal connection between the fallen wire and his shock. In

that case it was established that lightning entered a house along a telephone wire and injured plaintiff as she walked within two feet of the telephone connected to the wire. Recovery from the telephone company was allowed upon a showing that the company had failed to properly ground the wire leading into the house. The case of *Starr v. Telephone Co., supra*, is similar. There the defendant company had removed a telephone from plaintiff's house but had left wires leading into plaintiff's porch with loose ends twisted together and hanging down six to eight inches from the plate of the porch. At the same time, defendant had removed the lightning arrestor and severed the ground connection of the wires. During a storm, plaintiff arose from his porch to go into his house and as his head came within eighteen inches of the wire a ball or bolt of lightning came from the wires and struck him on the head. In both cases the Supreme Court rejected contentions that the cases should have been nonsuited, pointing out that the evidence justified the jury in finding that the lightning entered along the wires and caused plaintiff's injuries.

We find little similarity between those cases and the one at hand. There, plaintiffs offered direct evidence that the wires conducted the lightning to the immediate vicinity of plaintiffs and onto their persons. More evidence of causation would undoubtedly have been required had the wires been located 27 feet from the houses where plaintiffs sustained injuries.

More in point is the recent case of *Trull v. Well Co.*, 264 N.C. 687, 142 S.E. 2d 622. In that case plaintiff offered evidence that his house vibrated while defendant was engaged in well drilling operations nearby. Damage to the walls of the house occurred suddenly. There had been no damage to the house prior to defendant's drilling and the damage ceased when the drilling ceased. In affirming a judgment of nonsuit the Supreme Court noted that no witness had undertaken to explain the direct physical cause of the damage and stated:

"[T]he direct physical cause of the damage to the house rests in the realm of speculation. The vibrations from the machine caused the 'quivering' of the house. But were they responsible for the sudden opening of walls and ceiling? . . . This much we are told—the damage suddenly occurred after the drill had been in operation for some time. The drilling was stopped. When it was resumed, no

Ingold v. Light Co.

further damage resulted by reason of vibrations or from any other cause."

In *Christensen v. Northern States Power Co. of Wisconsin,* 222 Minn. 474, 25 N.W. 2d 659, plaintiff sought to recover damages for the death of fish allegedly electrocuted when defendant's tower, charged with 66,000 volts of electricity, fell and discharged electrical current into plaintiff's lake. Plaintiff offered no proof as to what effect the discharge of electricity into the lake might have had. The court reversed a verdict for the plaintiff on the ground any conclusion reached by the jury would be a matter of conjecture.

[4] In the case at hand we are told that wires fell 27 feet from a diesel engine being operated by plaintiff. Plaintiff felt a shock. Did the shock result from the fallen wires? In order to find that it did a jury would have to speculate that the electric current somehow got from the fallen wires a distance of at least 27 feet to the diesel engine. How did it traverse this distance? Was it conducted along the ground? There is no evidence that the ground was a sufficient conductor of electric current to have permitted this. Could the current have arced or jumped the 27-foot distance? We find no evidence in the record to even suggest that it might have. There is evidence that light from the fire caused by the falling wires was seen flashing against the engine. Electricity is invisible. Was the light, which was most certainly not electricity, evidence that the electricity was arcing to the engine? The record affords us no guidance with respect to this technical question. There was evidence that the diesel engine contained at least two electrical systems. Could they have caused the shock experienced by plaintiff?

In short, we find that plaintiff failed to "fill the gap" that obviously exists with respect to the question of causation. We may not assume his laboring oar and do so for him. The theory of *post hoc, ergo propter hoc* (after this, therefore because of this) is not sufficient. Evidence which does no more than raise a possibility or conjecture of a fact is not sufficient to withstand a motion by defendant for a directed verdict. *Henderson v. R. R.,* 159 N.C. 581, 75 S.E. 1092.

We conclude that the directed verdict for defendant was properly entered.

Affirmed.

Judges CAMPBELL and BRITT concur.