DOROTHY GWYN v. JACK ROSCOE LINCOLN

No. 7121SC429

(Filed 15 September 1971)

**Automobiles §§ 62, 83— injury to pedestrian — issues of negligence and contributory negligence**

A plaintiff who was struck by defendant's automobile as she attempted to cross a street at a place other than a marked or unmarked crosswalk failed as a matter of law to offer sufficient evidence of defendant's negligence and established by her own evidence her contributory negligence.

APPEAL by plaintiff from *Armstrong, Judge,* 25 January 1971 Session of FORSYTH Superior Court.

Plaintiff by this action seeks to recover damages for personal injuries sustained when she was struck by defendant's automobile as she attempted to cross 4½ Street in Winston-Salem. At the end of plaintiff's evidence, the court allowed defendant's motion for a directed verdict under Rule 50 on the grounds that plaintiff had offered no evidence of negligence on the part of defendant, and even should there be sufficient evidence of defendant's negligence, plaintiff's evidence disclosed her own contributory negligence as a matter of law. Plaintiff appeals, assigning as error the allowing of defendant's motion for directed verdict.

*W. Warren Sparrow for plaintiff appellant.*

*Edwin T. Pullen for defendant appellee.*

MORRIS, Judge.

The order entered on final pretrial conference contained stipulations that the accident occurred on 21 March 1970 on 4½ Street approximately 40 feet west of the intersection of 4½ and Broad Streets, that it was misting rain at the time, and plaintiff was a pedestrian crossing 4½ Street at a place not a marked crosswalk or an unmarked crosswalk.

The investigating police officer testified that 4½ Street is 24 feet wide. Both parties agreed that plaintiff was struck 5 feet from the north curb line of 4½ Street. There is a street light on the northeast corner of the intersection and one approximately 250 feet west (along 4½ Street) of the west curb line

of Broad Street. The loading dock for Sears Roebuck Company is in the southwest corner of the intersection. Sears Roebuck and the wall of the store come up almost to the southern edge of 4½ Street at Broad Street. There is no traffic control signal here. Mr. Lincoln was proceeding northwardly on Broad Street, approaching the intersection of Broad and 4½ Street. He said he had stopped at the intersection waiting for southbound traffic on Broad to pass so that he could make his turn. On the north side of 4½ Street there is no sidewalk. On the southern side of 4½ Street the sidewalk extends all the way down to the intersection of 4½ and Broad with the exception of the driveway at the Sears loading dock. The point of impact was about 39 feet west of the west curb line of Broad Street. Plaintiff was crossing at a place not marked as a crosswalk. The wall of the two story Sears building extends to where the sidewalk is. Mrs. Gwyn was walking diagonally from the southern side of 4½ Street. She had started at a place about 60 or 70 feet west of Broad Street on the southern side of 4½ Street. There was nothing to prevent her from continuing walking down the southern side of 4½ until she got to the intersection where she could have gone across the crosswalk to the other side. It was raining and it was dark. The posted speed limit there is 20 miles an hour. The intersection is not well lighted. The driveway which "runs into the loading dock" is used as a sidewalk. There were no tire marks. The car which hit Mrs. Gwyn did not run over her. It merely struck her and stopped there "at about where they struck."

The plaintiff testified that she had been shopping at Sears and was going back to 5th Street to catch the bus. She came out the back of Sears to 4½ Street near the loading dock and just past the telephone post. She started across the street going to 5th Street. "I didn't see anything coming when I started across the street. I didn't see a car and I crossed." She crossed diagonally. At the time she was wearing a red coat, navy dress with a red and white collar, red and black shoes, had two bags she had bought from Sears and an umbrella. It was dusk and drizzling rain. "As I crossed, I was hit. I was just about to the side and I was hit." There was a light at the corner, a regular street light. There were two lights on the side of the loading dock wall plus a big spotlight on a tower beyond the Sears building which shines in the general direction of the intersection. On cross-examination, plaintiff testified that there were no

cars parked on the street on either side and nothing in the loading dock area blocking her way or preventing her continuing to walk on the sidewalk until she reached the intersection. The place where she crossed was not a crosswalk. She had on a red coat, had her umbrella up, was carrying two packages, and her pocketbook was over her shoulder. She looked before crossing the street.

By deposition introduced by plaintiff, defendant testified that he had driven east on 4th Street, turned north on Broad and had traveled north on Broad to the intersection of 4½ Street. He stopped to allow three or four southbound cars to pass and then proceeded to turn. He traveled some 35 to 40 feet "and this lady was in the center, coming at an angle toward me, and I pulled to the curb, stopped, and at the same instant hit her. She didn't seem like she saw me at all until she was hit, until just an instant—she looked at me and she was hit at the same instant. She laid over—it wasn't a hard blow; it was about the instant of complete stop, and at that instant she was hit, and she laid over on the hood and then fell to the ground—to the street." She had an umbrella. It was dark maroon and the coat was almost the same color as the umbrella. As to how far away from her the witness was when he first saw her: "There wasn't any determination there. It was a split second because, like I say, it was, well it was dusk, or dark, the headlights were on, and it was misty rain, and with her dark apparel it was just—until my headlights was on her I didn't see her at all." There were no cars parked on 4½ Street and it is a one-way street in the direction in which witness was traveling. There was nothing between him and Mrs. Gwyn within the 40 feet from the corner to the point of impact. There was no vehicle in the left lane. He was in the right lane and "stopped and went to the curb to avoid her." He had seen people "jaywalk" there before. His speed when he turned the corner would be between 7 and 10 miles an hour. He went from a standstill on Broad Street and about 10 miles an hour is the highest speed he could have attained as he approached Mrs. Gwyn.

On a motion for a directed verdict the court must determine whether the evidence, taken in the light most favorable to plaintiff and giving it the benefit of every reasonable inference was sufficient to withstand defendant's motion. In determining the sufficiency of the evidence to withstand the motion, we are

guided by the same principles that prevailed under a former procedure with respect to a motion for judgment as of nonsuit. *Kelly v. Harvester Co.*, 278 N.C. 153, 179 S.E. 2d 396 (1971); *Ingold v. Light Co.*, 11 N.C. App. 253, 181 S.E. 2d 173 (1971). Applying these principles to the evidence before the Court in this case, we come to the conclusion that, as a matter of law, the evidence is insufficient to justify a verdict for plaintiff. She has failed, as a matter of law, to show sufficient evidence of negligence on the part of defendant to submit that issue to the jury, and has, by her own evidence, shown conclusively her contributory negligence.

Affirmed.

Judges BRITT and PARKER concur.