STATE OF NORTH CAROLINA v. BOBBY NEAL HELMS

No. COA96-1060

(Filed 2 September 1997)

**1. Evidence and Witnesses § 2176 (NCI4th)— HGN test—scientific test—qualified expert**

A horizontal gaze nystagmus (HGN) test represents specialized knowledge that must be presented to the jury by a qualified expert.

---

**2. Evidence and Witnesses § 2176 (NCI4th)— new scientific method of proof—reliability—applicability**

A new scientific method of proof is admissible at trial only if the method is sufficiently reliable and the reasoning or methodology is applicable to the facts in issue.

**3. Evidence and Witnesses § 2176 (NCI4th)— impaired driving—HGN test—insufficient foundation—admission of results—harmless error**

The State failed to present a sufficient foundation for the admission in a DWI prosecution of the results of an HGN test administered to defendant where the trial court did not purport to take judicial notice of the reliability of the HGN test, and no evidence was presented at trial and no inquiry was conducted regarding reliability of the HGN test. However, the admission of the arresting officer's testimony concerning the results of the HGN test was harmless error because the other testimony offered at the trial overwhelmingly established defendant's guilt of DWI where it showed that the officer observed defendant's erratic operation of his vehicle; the officer noticed a strong odor of alcohol emanating from defendant; the officer observed that defendant's speech was "mumbled," he was unsteady on his feet, his eyes were bloodshot, his shirt tail was hanging out, and his clothes were soiled; and defendant failed other sobriety tests administered to him.

Appeal by defendant from judgment entered 24 April 1996 by Judge Howard R. Greeson, Jr. in Union County Superior Court. Heard in the Court of Appeals 14 May 1997.

*Attorney General Michael Easley, by Special Deputy Attorney General Isaac T. Avery, III, for the State.*

*Shawna Davis Collins for defendant-appellant.*

JOHN, Judge.

Defendant appeals judgment entered upon conviction for driving while impaired in violation of N.C.G.S. § 20-138.1 (1993). He contends the trial court erred by allowing the arresting officer to testify to results of a horizontal gaze nystagmus (HGN) test administered to defendant. While we agree the State failed to lay a proper foundation at trial for admission of the HGN test results, we conclude the error was harmless and uphold defendant's conviction.

The State's evidence adduced at trial tended to show the following: Officer E.P. Bradley (Bradley) was stopped at an intersection in Monroe, North Carolina, at approximately 4:00 a.m. on 30 December 1995 when defendant drove past. Bradley noticed the tail lights of defendant's automobile were not operating and, while following the vehicle, observed it weave from the left side of its lane of travel to the right, striking the curb with the right front tire. Bradley activated his blue light, and defendant's automobile made a wide right turn onto a side street, veering into the opposite lane before coming to a stop.

Bradley approached the vehicle and noticed a strong odor of alcohol as defendant rolled down the driver's side window. Bradley requested that defendant produce his driver's license, and the latter indicated "he didn't have any license." Bradley noted defendant's speech was "mumbled" and asked him to exit his vehicle. As defendant did so, he was unsteady on his feet. Bradley further observed defendant's eyes were bloodshot, his shirt tail was hanging out, and his clothes were soiled. As defendant sat in the patrol car, Bradley noted a strong odor of alcohol emanating from defendant.

Bradley thereafter administered a HGN test. Nystagmus is a physiological condition that involves

> an involuntary rapid movement of the eyeball, which may be horizontal, vertical or rotary. An inability of the eyes to maintain visual fixation as they are turned from side to side (in other words jerking or bouncing) is known as horizontal gaze nystagmus, or HGN.

*People v. Leahy*, 882 P.2d 321, 323 (Cal. 1994) (citations omitted). The test typically has three components, *see Commonwealth v. Sands*, 675 N.E.2d 370, 372 (Mass. 1997), each of which was contained in the test administered by Bradley to defendant. Bradley directed defendant to focus upon a pen held twelve to fifteen inches from defendant's face as Bradley slowly moved the pen out of defendant's field of vision towards the latter's ear. Bradley sought to observe 1) whether the onset of nystagmus was less than forty five degrees; 2) whether nystagmus, when defendant's eyes were moved as far as possible to one extreme, was moderate or distinct; and 3) whether defendant's eyes were able to move smoothly from side to side as they tracked the pen. *See State v. Breeson*, 554 N.E.2d 1330, 1333 (Ohio 1990) (setting out components of HGN test). Bradley testified that twitching of defendant's eyes during administration of the test would be associated with alcohol intoxication. On redirect examination, Bradley

stated he had completed a forty hour training class dealing with the HGN test.

Based upon the results of the HGN test, as well as his observations concerning defendant's operation of his vehicle and the odor of alcohol on defendant's breath, Bradley formed the opinion that defendant had consumed a sufficient quantity of alcohol so as to have impaired his mental and physical faculties. Bradley thereupon placed defendant under arrest and transported him to the county jail, where defendant refused administration of an intoxilyzer test.

In a holding cell at the jail and at Bradley's direction, defendant attempted another sobriety measuring test known as the one-legged stand. Defendant was asked to keep his hands at his side while lifting his foot approximately six inches from the floor and counting to thirty. Bradley testified defendant dropped his foot three times and "stopped the test" at the count of fifteen. Further, defendant was unable to keep his hands lowered and swayed from side to side.

Defendant was also directed to perform the walk-and-turn test, in which he was to stand with his hands by his side and walk heel-to-toe down a line, turn, and then return to the starting point in the same fashion. Defendant failed to touch his heels to his toes and swayed, using his hands to maintain his balance.

Defendant presented no evidence at trial.

Following a jury verdict of guilty, defendant was sentenced to a term of two years imprisonment based upon the presence of aggravating factors. Defendant appeals.

The sole argument presented by Defendant is that Bradley's testimony concerning the HGN test was inadmissible. Defendant contends the HGN test is a scientific test and thus admissible only following a proper foundation pursuant to. N.C.G.S. § 8C-1, Rule 702 (1992). *See State v. Pennington*, 327 N.C. 89, 98, 393 S.E.2d 847, 852 (1990). Because the State failed to lay such a foundation, defendant asserts, the HGN evidence was improperly admitted.

The State responds that Bradley's testimony merely described his first-hand observation of defendant's conduct and was therefore admissible under N.C.G.S. § 8C-1, Rule 701. *See State v. Lindley*, 286 N.C. 255, 258, 210 S.E.2d 207, 210 (1974) (law enforcement officer may present opinion evidence as to defendant's intoxication based upon observation).

Without doubt, common experience teaches that alcohol affects one's balance, coordination, speech, and ability to recollect. *See Schultz v. State*, 664 A.2d 60, 65 (Md. Ct. Spec. App. 1995). When an officer describes a suspect's behavior in regard to these categories, such testimony is within the understanding of the ordinary juror. *See State v. Anderson*, 85 N.C. App. 104, 108, 354 S.E.2d 264, 266, *rev'd on other grounds*, 322 N.C. 22, 366 S.E.2d 459 (1988) (citation omitted) ("expert testimony usually admitted to explain to juries what they otherwise would not understand"). Some jurisdictions have determined the HGN test to be similar to other field tests which measure behavior commonly associated with intoxication and therefore to require no additional foundation for admission beyond first-hand observation. *See, e.g., State v. Murphy*, 451 N.W.2d 154 (Iowa 1990); *State v. Nagel*, 506 N.E.2d 285 (Ohio Ct. App. 1986); *State v. Sullivan*, 426 S.E.2d 766 (S.C. 1993).

The majority of courts, however, have concluded the HGN test is a scientific test requiring a proper foundation to be admissible. *See, e.g., State v. Superior Court In and For Cochise County*, 718 P.2d 171 (Ariz. 1986); *People v. Leahy*, 882 P.2d 321 (Cal. 1994); *State v. Meador*, 674 So.2d 826 (Fla. Dist. Ct. App.), *review denied*, 686 So.2d 580 (Fla. 1996); *Commonwealth v. Sands*, 675 N.E.2d 370 (Mass. 1997); *Schultz v. State*, 664 A.2d 60 (Md. Ct. Spec. App. 1995); *People v. Erickson*, 156 A.D.2d 760 (N.Y. App. Div. 1989), *appeal denied*, 555 N.E.2d 623 (N.Y. 1990); *City of Fargo v. McLaughlin*, 512 N.W.2d 700 (N.D. 1994); *Commonwealth v. Miller*, 532 A.2d 1186 (Pa. Super. Ct. 1987); *Emerson v. State*, 880 S.W.2d 759 (Tex. Crim. App.), *cert. denied*, 513 U.S. 931, 130 L. Ed. 2d 284 (1994); *State v. Cissne*, 865 P.2d 564 (Wash. Ct. App.), *review denied*, 877 P.2d 1288 (1994).

[1] We agree with the majority view that the HGN test does not measure behavior a lay person would commonly associate with intoxication. Rather,

> it is based upon a scientific principle that the extent and manner in which one's eye quivers can be a reliable measure of the amount of alcohol one has consumed.

*Schutz*, 664 A.2d at 65. The test therefore represents specialized knowledge that must be presented to the jury by a qualified expert pursuant to N.C.G.S. § 8C-1, Rule 702.

[2] The United States Supreme Court, interpreting the Federal Rules of Evidence, has stated there is a presumption inherent in Rule 702

that "the expert's opinion will have a reliable basis in the knowledge and experience of his discipline." *Daubert v. Merrell Dow*, 509 U.S. 579, 592, 125 L. Ed. 2d 469, 482 (1993). Under this state's rules of evidence, "[a] new scientific method of proof is admissible at trial [only] if the method is sufficiently reliable," *Pennington*, 327 N.C. at 98, 393 S.E.2d at 852, *i.e.*, if "the reasoning or methodology underlying the [method] is sufficiently valid," *State v. Goode*, 341 N.C. 513, 527, 461 S.E.2d 631, 639 (1995). *See also Daubert*, 509 U.S. at 590, 125 L. Ed. 2d at 481 n.9 (defining "reliability" in a legal context—"*evidentiary reliability*" is "based upon *scientific validity*"). The court's "gatekeeping" function in this regard is made necessary by the heightened credence juries tend to give evidence perceived as scientific. *State v. O'Key*, 899 P.2d 663, 672 (Or. 1995) (court must insure persuasive appeal of scientific evidence is legitimate). If reliable, the reasoning or methodology must then be determined to be "properly appli[cable] to the facts in issue." *Goode* at 527, 461 S.E.2d at 639.

No decision of our appellate courts has addressed the admissibility of HGN evidence. In such circumstance, the trial court may determine reliability "either by judicial notice or from the testimony of scientists who are expert in the subject matter, or by a combination of the two." *State v. Bullard*, 312 N.C. 129, 148, 322 S.E.2d 370, 381 (1984) (quoting earlier edition of 1 Kenneth S. Broun, *Brandis & Broun on North Carolina Evidence* § 113, at 361 (4th ed. 1993)).

**[3]** It is well established that

[a] court may take judicial notice of a fact within a field of any particular science which is so notoriously true as not to be the subject of reasonable dispute or is capable of demonstration by resort to readily accessible sources of indisputable accuracy.

*Ingold v. Light Co.*, 11 N.C. App. 253, 256, 181 S.E.2d 173, 174 (1971). In the case *sub judice*, the record contains no indication the trial court purported to take judicial notice of the reliability of the HGN test. *See* N.C.G.S. § 8C-1, Rule 201(e) and (g) (party entitled to be heard on request to take judicial notice; in criminal trial, court must instruct jury it may, but is not required to, accept as conclusive any fact judicially noticed). In addition, no evidence was presented at trial nor any inquiry conducted regarding reliability of the HGN test. Therefore, admission into evidence of Bradley's testimony concerning results of the HGN test administered to defendant was error.

**TOWN CENTER ASSOC. v. Y & C CORP.**

[127 N.C. App. 381 (1997)]

Prior to concluding, we note judicial notice may be taken at the appellate court level. *See* N.C.G.S. § 8C-1, Rule 201(f). However, we decline the State's invitation to take judicial notice of the "scientific validity," *Daubert* at 590, 125 L. Ed. 2d at 481 n.9, of the HGN test on the record before us. *See State v. Witte*, 836 P.2d 1110, 1121 (Kan. 1992) (declining to rule on admissibility of HGN test prior to opportunity of trial court to weigh disputed facts concerning reliability thereof); *see also* Charles R. Honts & Susan L. Amato-Henderson, *Horizontal Gaze Nystagmus Test: The State of the Science in 1995*, 71 North Dakota Law Review 671 (1995) (asserting necessity of expert testimony on HGN test prior to holding test sufficiently reliable to be received into evidence).

Notwithstanding improper admission of the HGN test results, the remaining testimony offered at trial as summarized above overwhelmingly established defendant's guilt of the crime of driving while impaired. Accordingly, receipt of the evidence constituted harmless error, and defendant's conviction stands undisturbed. *See* N.C.G.S. § 15A-1443 (1988) (defendant must show that had error in question not been committed, reasonable possibility exists that different result would have been reached at trial).

No error.

Judges GREENE and WALKER concur.