JOSEPH M. PHELPS v. DUKE POWER COMPANY, A CORPORATION

No. 8415SC1246

(Filed 6 August 1985)

1. Electricity § 4.1— height of electrical wire—electrical codes erroneously excluded

The trial court erred in an action to recover for personal injuries sustained when plaintiff's combine came into contact with defendant's power line by excluding evidence relating to the National Electrical Safety Code and defendant's own adopted safety standards. Although the National Code is not decisive on the issue and voluntary safety codes are generally not admissible, both were admissible as an aid to the prudent or reasonable man rule.

2. Electricity § 5.1— negligence—height of power line—directed verdict improper

The trial court erred by directing a verdict for defendant in an action for personal injuries suffered when plaintiff's combine came into contact with defendant's power line and the court had erroneously excluded evidence of the National Electrical Safety Code and defendant's own safety standards. All of the competent evidence viewed most favorably to plaintiff would have revealed that the industry standard as contained in the National Code required minimum line heights over cultivated fields of sixteen feet four inches in the 1941 code and twenty-one feet in the 1977 code, that defendant's own internal standards required a minimum height of eighteen or nineteen feet, that the Code required regular inspection and maintenance of lines, that defendant's power line constructed around 1948 was approximately twelve feet three inches high, and that defendant had no record of inspection or maintenance of that power line.

3. Electricity § 7.1— personal injury—height of power line over cultivated field— proximate cause

In an action for personal injuries suffered after plaintiff's combine came into contact with defendant's power line, reasonable minds might differ as to whether plaintiff's injuries were foreseeable and the question should be left for the jury.

4. Electricity § 8— power line over cultivated field—contact with combine—contributory negligence

Plaintiff was not contributorily negligent as a matter of law where the evidence showed that he noticed smoke coming from the right front tire of his combine after making more than one circle around a cultivated field, and would further show through reasonable inference that he climbed down from the cab of the combine, went around to the right front tire to check on the cause of the smoke, and received an electric shock on his right front shoulder when it came into contact with the combine. Although there is a legal duty to avoid contact with a known electrical wire, a person is not guilty of contributory negligence as a matter of law if he contacts a known electrical wire regardless of the circumstances or of any precaution he may have taken.

Phelps v. Duke Power Co.

**5. Negligence § 28— directed verdict—judgment n.o.v. better practice**

Issues of negligence are ordinarily not susceptible of summary adjudication either for or against the claimant and the better practice is to deny a motion for a directed verdict and to submit the case to the jury; the trial court may reconsider the sufficiency of the evidence after the jury has rendered its verdict. The jury's verdict may then be reinstated without the need for a new trial if on appellate review the trial court's decision is vacated.

**6. Electricity § 10— punitive damages—evidence insufficient**

In an action for personal injuries resulting from plaintiff's combine touching defendant's power line, the evidence was insufficient to permit the jury reasonably to infer that defendant's actions were motivated by malice, wickedness or a reckless indifference to the rights of plaintiff and the trial court properly directed a verdict in favor of defendant on the issue of punitive damages.

APPEAL by plaintiff from *Lane, Judge.* Judgment entered 31 May 1984 in Superior Court, ORANGE County. Heard in the Court of Appeals 4 June 1985.

Plaintiff seeks to recover for personal injuries sustained on 23 November 1979, as a result of an electrical charge from defendant's high voltage line. The evidence for plaintiff tended to show that on 23 November 1979, plaintiff was harvesting soybeans in the McKee field. Plaintiff and his father had farmed the McKee field for the previous eight to ten years, planting and harvesting soybeans, corn and grain. On the date of the accident, plaintiff was operating a 715 International Harvester, which was approximately thirteen feet high. Plaintiff and his father purchased this combine in June of 1979. Prior to this date, they operated a 615 model which was only a few inches smaller than the 715 model.

Plaintiff, on 23 November 1979, began to combine the soybeans in the McKee field in a clockwise manner. He had made more than one circle in the field with the combine when he noticed smoke coming from the right front tire. Not knowing the cause of the smoke, he stated "he needed to see what was happening." The next thing plaintiff remembered was waking up in Durham County General Hospital. Plaintiff testified that at all times while he was combining the field, his attention was directed directly in front of him. Plaintiff was burned on his right shoulder and left thigh. The treating physician stated the right shoulder was the entry wound and the left thigh was the exit wound.

Plaintiff's witnesses testified that they found the combine under the forecorner of defendant's powerline. The powerline was running across the combine, real close above the top of the cab. One estimate put the powerline approximately four inches above the cab. The tires of the combine had sunk down into the ground. They also found some money and a knife under the powerline where the right front tire of the combine was located.

The powerline located above the cab of the combine was built by the defendant around 1948. There was evidence produced that during a severe ice storm in the winter of 1978, a cedar tree was down across a portion of the powerline. Defendant repaired the broken portion of the powerline, but there was no record of an inspection or repair to any other portion of the powerline. There is no history of any inspection to the powerline since it was built. Defendant's branch manager, George Johnson, investigating the McKee field after the accident, felt the wires to be low. His measurements showed that the lowest point from ground to wire was twelve feet three inches. Johnson's report designated the point the combine hit the wire as that lowest point.

The powerline in question had the primary or hot line (known as the conductor) on the bottom and the neutral line on top. Defendant has stopped constructing its powerlines in this manner. The lines, carrying a current of 7,200 volts, were not insulated.

Plaintiff attempted to introduce into evidence the National Electrical Safety Code and defendant's own adopted safety standards, but the trial judge upon motions by defendant excluded the evidence. At the close of plaintiff's evidence, defendant moved for a directed verdict on the grounds: (1) that plaintiff failed to offer evidence of actionable negligence for which a jury could find defendant was negligent with respect to plaintiff's injuries and (2) if defendant was negligent, plaintiff's evidence established that plaintiff was contributorily negligent as a matter of law. On 31 May 1984, the trial court granted defendant's motion for a directed verdict. From this judgment, plaintiff appeals.

*Coleman, Bernholz, Dickerson, Bernholz, Gledhill & Hargrave, by Douglas Hargrave, for the plaintiff.*

*William I. Ward, Jr. and Newson, Graham, Hedrick, Bryson & Kennon, by E. C. Bryson, Jr., Joel M. Craig and Charles F. Carpenter and Cheshire & Parker, by Lucius Cheshire, for defendant.*

JOHNSON, Judge.

### Negligence

[1]   A motion for a directed verdict made pursuant to G.S. 1A-1, Rule 50 tests the sufficiency of the evidence to go to the jury. In determining the sufficiency of the evidence to withstand a motion for a directed verdict, the court must consider the evidence in the light most favorable to the plaintiff and may grant the motion only if, as a matter of law, the evidence is insufficient to justify a verdict for the plaintiff. Plaintiff's claim must be taken as true and viewed in the light most favorable to him, giving him the benefit of every reasonable inference which may legitimately be drawn therefrom. *Ingold v. Light Co.*, 11 N.C. App. 253, 181 S.E. 2d 173 (1971).

We believe that in passing upon the motion for directed verdict the trial court must consider all competent evidence presented by the plaintiff, therefore we first consider the trial court's exclusion of plaintiff's evidence relating to the National Electrical Safety Code and defendant's own adopted safety standards. We believe it was error to exclude such evidence. As to the National Electrical Safety Code, we still adhere to the principle set forth in *Hale v. Power Co.*, 40 N.C. App. 202, 252 S.E. 2d 265, *disc. rev. denied*, 297 N.C. 452, 256 S.E. 2d 805 (1979) that the code is not decisive on the issue of negligence and that the prudent or reasonable man rule still controls. But, *Hale* also stands for the proposition that the code is instructive as to whether an electrical company used reasonable care. *Id.; see also, Cole v. Duke Power Co.*, 68 N.C. App. 159, 314 S.E. 2d 808, *disc. rev. denied*, 311 N.C. 752, 321 S.E. 2d 133 (1984). The code therefore is admissible as an aid to the prudent or reasonable man rule, therefore it was error for the trial court to exclude evidence of the National Safety Codes' standard as to appropriate height for electrical lines.

As to defendant's own internal standards of appropriate height of its electrical lines, we also believe the trial court erred in excluding this evidence. We are acutely aware of the general proposition that voluntary safety codes or policies, which have not been given compulsory force by the legislature, whether issued by government agencies on voluntary safety councils, are not admissible in evidence. *Sloan v. Light Co.,* 248 N.C. 125, 102 S.E. 2d 822 (1958). However, we find *Slade v. Board of Education,* 10 N.C. App. 287, 178 S.E. 2d 316, *cert. denied,* 278 N.C. 104, 179 S.E. 2d 453 (1971) dispositive of this contention. In that case the defendant had voluntarily adopted certain safety policies and procedures, published in a handbook for bus drivers, to insure the safety of children riding in school buses. The court admitted the handbook into evidence, holding, *inter alia*:

> [W]here it appears that defendant has voluntarily adopted the rules or safety standards as a guide for the protection of the public, they are admissible as some evidence that a reasonably prudent person would adhere to their requirements. . . . The book obviously set forth the rules and standards of conduct which defendant instructed its drivers to follow in order to protect passengers and the public. They are defendant's rules and standards. It is universally held that a defendant may not complain about the introduction in evidence of its own relevant rules of conduct.

*See also, Briggs v. Morgan,* 70 N.C. App. 57, 318 S.E. 2d 878 (1984). We find that in the case *sub judice,* defendant's internal standards of safety should have been admitted into evidence.

[2] We would hold that in light of the exclusion of this evidence, the trial court in directing a verdict for defendant, did not view all the competent evidence in the light most favorable to plaintiff. The evidence would then have revealed: (1) that the industry standard as contained in the National Electrical Safety Code required minimum line heights over cultivated fields of sixteen feet four inches since the 1941 code and twenty-one feet in the 1977 code; (2) that defendant's own internal standards required a minimum height of eighteen or nineteen feet; (3) that the Code required regular inspection and maintenance of lines; (4) that defendant's power line constructed around 1948 was approximately twelve feet three inches high; and (5) that defendant had no record of inspection or maintenance of this powerline.

Applying all the evidence produced by plaintiff to the standard of care required of electrical companies as enunciated by our Supreme Court, *see Helms v. Power Co.*, 192 N.C. 784, 136 S.E. 9 (1926); *see also, Alford v. Washington*, 238 N.C. 694, 78 S.E. 2d 915 (1953), we believe reasonable minds could differ as to defendant's negligence; therefore, we cannot agree that the trial court properly entered a directed verdict based on the ground that defendant, as a matter of law, was not negligent.

The trial court rendered no opinion and stated no reason for granting the directed verdict. The trial court having failed to note any reason for awarding the directed verdict, we have no way to know whether such action related to the question of negligence on the part of the defendant, proximate cause of the injury or contributory negligence on the part of the plaintiff. It is necessary, therefore, to review the questions of proximate cause and contributory negligence.

### Proximate Cause

[3] The test of proximate cause is whether the risk of injury, not necessarily in the precise form in which it actually occurs, is within the reasonable foresight of the defendant. *Brown v. Power Co.*, 45 N.C. App. 384, 263 S.E. 2d 366, *disc. rev. denied*, 300 N.C. 194, 269 S.E. 2d 615 (1980). However, it is only in exceptional cases, in which reasonable minds cannot differ as to foreseeability of injury, that a court should decide proximate cause as a matter of law. "[P]roximate cause is ordinarily a question of fact for the jury, to be solved by the exercise of good common sense in the consideration of the evidence of each particular case." (Citations omitted.) *Williams v. Power & Light Co.*, 296 N.C. 400, 250 S.E. 2d 255 (1979).

If under the circumstances of this case, defendant could have reasonably foreseen that placing its wires over the McKee field, where large farm machinery would be used, might result in harm to others, it would be answerable for plaintiff's injuries. We do not find as a matter of law that the type of injury incurred by plaintiff from defendant's alleged negligence was unforeseeable. We believe that reasonable minds might differ, as to whether plaintiff's injuries were foreseeable, therefore the question is one properly left for the jury to resolve. If the directed verdict was granted upon this ground it was error.

### Contributory Negligence

[4]   It has long been the law in this State that "[t]he burden of showing contributory negligence . . . is on the defendant, and the motion for nonsuit may never be allowed on such an issue where the controlling and pertinent facts are in dispute, nor where opposing inferences are permissible from plaintiff's proof, nor where it is necessary . . . to rely, in whole or in part, on evidence offered for the defense." *Williams v. Power & Light Co., supra.*

Plaintiff's evidence reveals that plaintiff had made more than one circle around the McKee field. While making these circles, he noticed smoke coming from the right front tire. Plaintiff knew he had to check the tires. Plaintiff's evidence would further show through reasonable inferences that he climbed down from the cab of the combine, whereupon he went around to the front right tire to check on the cause of the smoke. At this point his right shoulder came in contact with the combine giving him an electric shock. The doctor's report cited the wound on plaintiff's shoulder as the entry wound and the wound on plaintiff's thigh as the exit wound. The record does not reveal whether plaintiff knew that the combine was in contact with the power line. From this evidence, we believe it is for the jury to determine if plaintiff's actions were reasonable under the circumstances.

Defendant argues that the plaintiff was aware of the electrical lines, thus he was negligent in bringing the combine in contact with the lines. We disagree. We are well aware of the rule, which is well settled, that a person has a legal duty to avoid contact with an electrical wire of which he is aware and which he knows may be very dangerous. *Alford v. Washington,* 244 N.C. 132, 92 S.E. 2d 788 (1956). "That does not mean, however, that a person is guilty of contributory negligence as a matter of law if he contacts a known electrical wire regardless of the circumstances and regardless of any precautions he may have taken to avoid the mishaps." *Williams v. Power & Light Co., supra.*

Defendant relies on cases where the plaintiff through an affirmative act on his part brought his machinery in contact with the electrical line. *Floyd v. Nash,* 268 N.C. 547, 151 S.E. 2d 1 (1966) (plaintiff raised the blower pipe of his feed tank into contact with the power line); *Lambert v. Power Co.,* 32 N.C. App. 169, 231 S.E. 2d 31, *disc. rev. denied,* 292 N.C. 265, 233 S.E. 2d 392

(1977) (workman contacted electrical wire while working on top of a large outdoor sign); *Bogle v. Power Co.*, 27 N.C. App. 318, 219 S.E. 2d 308 (1975), *disc. rev. denied*, 289 N.C. 296, 222 S.E. 2d 695 (1976) (workman, while moving an aluminum ladder, allowed the ladder to come to rest against an overhanging power line). These cases are clearly distinguishable from the case *sub judice.* We fail to find that plaintiff was contributorily negligent as a matter of law, therefore if the directed verdict was granted on this ground it was error to do so.

We find that the trial court erred in directing a verdict for the defendant. Because the trial court runs the risk of invading the province of the jury, directed verdicts and summary judgments are to be sparingly granted in negligence actions. *Williams v. Power & Light Co., supra.* "The jury has generally been recognized as being uniquely competent to apply the reasonable man standard. Because of the peculiarly elusive nature of the term 'negligence,' the jury generally should pass on the reasonableness of conduct in light of all the circumstances of the case. This is so even though in this State '[w]hat is negligence is a question of law, and when the facts are admitted or established, the court must say whether it does nor does not exist.'" *Willis v. Power Co.*, 42 N.C. App. 582, 591, 257 S.E. 2d 471, 477 (1979), *quoting McNair v. Boyette*, 282 N.C. 230, 236, 192 S.E. 2d 457, 461 (1972).

[5]   Also, as a general proposition, issues of negligence are ordinarily not susceptible of summary adjudication either for or against the claimant "but should be resolved by trial in the ordinary manner." *See, Vassey v. Burch*, 301 N.C. 68, 73, 269 S.E. 2d 137, 140 (1980). We believe the better practice is for the trial court to deny the motion for a directed verdict and submit the case to the jury. After the jury has rendered its verdict, the trial court may reconsider the sufficiency of the evidence and if it finds the evidence insufficient, it can enter judgment not withstanding the verdict. Therefore, if on appellate review the trial court's decision is vacated, the jury's verdict may be reinstated without the need for a new trial.

[6]   In his final assignment of error, plaintiff contends the trial court erred in granting defendant's motion for directed verdict on the issues of punitive damages.

Our Court has stated that "[u]nder the common law of this State punitive damages may be awarded 'when the wrong is

done willfully or under circumstances of rudeness or oppression, or in a manner which evinces a reckless and wanton disregard of plaintiff's rights.' " "An act is wanton when it is done of wicked purpose or when done needlessly, manifesting a reckless indifference to the rights of others." An act is wilful when there exists "a deliberate purpose not to discharge some duty necessary to the safety of the person or property of another," a duty assumed by contract or imposed by law. (Citations omitted.)

*Beck v. Carolina Power & Light Co.*, 57 N.C. App. 373, 291 S.E. 2d 897 (1982).

Applying these principles of law to the evidence presented by plaintiff, we conclude that the evidence was insufficient to permit the jury reasonably to infer that defendant's actions were motivated by malice, wickedness or a reckless indifference to the rights of the plaintiff. We find that the trial court properly directed a verdict in favor of the defendant on the issue of punitive damages.

We do not believe plaintiff's remaining assignments of error will arise at the new trial.

For the reasons stated,

Directed verdict on the issue of negligence is reversed and plaintiff is entitled to a new trial.

Directed verdict on the issue of punitive damages affirmed.

Judges WELLS and COZORT concur.