(No. 62312.—

WILLIAM C. RUFFINER, Appellee, v. MATERIAL
SERVICE CORPORATION, Appellant.

*Opinion filed April 2, 1987.*

CLARK, C.J., and SIMON, J., took no part.

Lord, Bissell & Brook, of Chicago (Richard E. Mueller and Hugh C. Griffin, of counsel), for appellant.

John C. Sands, John M. Janewicz, and William J. Harte, Ltd. (William J. Harte, of counsel), of Chicago, for appellee.

JUSTICE MILLER delivered the opinion of the court:

Following a jury trial in the circuit court of Cook County, the plaintiff, William C. Ruffiner, was awarded

$1,250,000 in damages for injuries he sustained while working aboard a towboat owned by the defendant, Material Service Corporation. The appellate court affirmed the judgment (*Ruffiner v. Material Service Corp.* (1985), 134 Ill. App. 3d 747), and we allowed the defendant's petition for leave to appeal (103 Ill. 2d R. 315(a)).

The accident in question occurred on March 25, 1977. Shortly after 9 o'clock that morning the plaintiff, employed as chief engineer on the *M/V Irving Crown,* was climbing up to the pilot house when he slipped, falling a distance of 7 or 8 feet. The plaintiff injured his back in the fall, and ultimately he was unable to return to work. At the time of the accident the *Irving Crown,* with a tow of 12 barges, was approaching the Brandon Road locks on the Illinois River, near Joliet. The plaintiff, then 50 years old, was an experienced sailor, and he had previously served on the *Irving Crown,* though his regular assignment with the defendant was on a different vessel.

The *Irving Crown,* built in 1952, had a retractable pilot house, which could be lowered to avoid bridges and other river obstructions; access to the pilot house was provided by an arrangement of two ladders. The ladders, made of steel pipe, were perpendicular to the side of the pilot house and faced the stern of the boat; when the pilot house was lowered, the ladders would be side by side. The lower, outside ladder was 7 feet, 6 inches high and was attached to a bulkhead of similar height that formed a well; the upper, inside ladder was 9 feet, 9 inches high and was attached to the pilot house. The pilot house was raised when the accident occurred, and the plaintiff fell as he was attempting to make the transfer from the lower ladder to the upper ladder.

The plaintiff initially asserted three separate grounds for recovery against the defendant: negligence under the Jones Act (46 U.S.C. sec. 688 (1976)), unseaworthiness, and maintenance and cure. The Jones Act provides a

cause of action for a seaman who is injured as a result of a shipowner's negligence (*Panama R.R. Co. v. Johnson* (1924), 264 U.S. 375, 68 L. Ed. 748, 44 S. Ct. 391); the doctrine of seaworthiness imposes on a shipowner an absolute duty to furnish a vessel and appurtenances that are reasonably fit for their intended use (*Mitchell v. Trawler Racer, Inc.* (1960), 362 U.S. 539, 550, 4 L. Ed. 2d 941, 948, 80 S. Ct. 926, 933). "Maintenance and cure" describes the obligation of a shipowner to provide for the care and expenses of an injured sailor. (*Calmar Steamship Corp. v. Taylor* (1938), 303 U.S. 525, 528, 82 L. Ed. 993, 997, 58 S. Ct. 651, 653.) During trial the plaintiff dismissed that part of his complaint seeking recovery for maintenance and cure, and the action proceeded on the two remaining grounds, negligence and unseaworthiness. In addition to testimony regarding the extent of his physical disability and his loss of earnings, the plaintiff was allowed to introduce into evidence expert testimony to the effect that the pilot-house ladders on the *Irving Crown* were unsafe because they failed to conform to certain standards applicable to fixed ladders. The jury found the defendant liable and awarded the plaintiff $1,250,000 in compensatory damages; the jury was instructed on contributory negligence, and it returned its verdict on the form that it had been told to use if it found that the plaintiff was not negligent in any degree. The judgment was affirmed by a divided appellate court panel. The court rejected the defendant's arguments that the standards evidence was not relevant here, that the verdict was excessive, and that the inappropriate verdict forms were used.

In support of his claims of negligence and unseaworthiness, the plaintiff introduced at trial the testimony of Edward McLean, an industrial engineer. McLean had helped plan and construct a large number of industrial plants, and this work had included the design of ladders.

McLean believed that the pilot-house ladders on the *Irving Crown* were unsafe, and he based his opinion on a set of standards promulgated by the American National Standards Institute (ANSI). The standards, known collectively as American National Standard A14.3—1974, prescribed certain guidelines and dimensions for the construction of fixed ladders, and at trial McLean testified that the pilot-house ladders on the *Irving Crown* did not meet several of those provisions. The ANSI standards prescribed a minimum rung width of 16 inches, but the rungs of the lower ladder were $9^{11}/_{16}$ inches wide and those on the upper ladder were $5^9/_{16}$ inches wide. The ANSI standards prescribed a minimum distance of seven inches between the center of each rung and any permanent surface behind the ladder; the rungs on the lower ladder were $6^{11}/_{16}$ inches from the bulkhead, and the rungs on the upper ladder were $5^3/_4$ inches from the bulkhead. Finally, the ANSI standards required that a ladder occupy the center of the well, but neither ladder here was centered. The differences between the ANSI standards and the pilot-house ladders on the *Irving Crown* led McLean to conclude that the pilot-house ladders were unsafe. McLean acknowledged that compliance with the ANSI standards would have made the ladders too big for the ladder well, which was only 30 inches wide.

McLean's conclusions were disputed by George Leithner, who testified in the defendant's behalf. Leithner was a marine surveyor, and in that employment he investigated marine accidents to determine the cause and extent of damage and the cost of repair. Leithner had made a survey of the pilot-house ladders on the *Irving Crown*, and from his inspection and own use of them he concluded that they were safe and reasonably fit for their intended use. Moreover, Leithner testified that he was not aware of any industry or trade standards that

were applicable to the pilot-house ladders on the *Irving Crown.*

Evidence of standards promulgated by industry, trade, or regulatory groups or agencies may be admissible to aid the trier of fact in determining the standard of care in a negligence action. (*Merchants National Bank v. Elgin, Joliet & Eastern Ry. Co.* (1971), 49 Ill. 2d 118, 125; *Darling v. Charleston Community Memorial Hospital* (1965), 33 Ill. 2d 326, 330-32; see *Lake Shore & Michigan Southern Ry. Co. v. Ward* (1891), 135 Ill. 511, 517-18.) Similarly, standards may be relevant in a product liability action in determining whether a condition is unreasonably dangerous (*Moehle v. Chrysler Motors Corp.* (1982), 93 Ill. 2d 299, 304-05; *Rucker v. Norfolk & Western Ry. Co.* (1979), 77 Ill. 2d 434, 438), which would be analogous to determining whether a condition rendered a vessel unseaworthy. Moreover, evidence of standards may be relevant and admissible even though the standards have not been imposed by statute or promulgated by a regulatory body and therefore do not have the force of law. (*Merchants National Bank v. Elgin, Joliet & Eastern Ry. Co.* (1971), 49 Ill. 2d 118, 125.) To be admissible, standards must be relevant "in terms of both time and conduct involved." *Murphy v. Messerschmidt* (1977), 68 Ill. 2d 79, 84.

The defendant contends that the ANSI standards were not shown to be relevant to the circumstances in this case, and we agree. By their terms the standards are applicable to fixed ladders. On the *Irving Crown,* a special arrangement of ladders was made necessary by the retractable pilot house. Although the lower ladder was attached to a bulkhead and the upper ladder was attached to the pilot house, the pilot house itself could be raised and lowered. Thus, it does not appear that the ANSI standards were intended to apply to the sort of special arrangement required here.

To be sure, the movable nature of the upper ladder would not by itself prevent the ladder from having dimensions in the ranges prescribed by ANSI. But there is a more general objection to applying the standards here. The ANSI standards would be applicable to fixed ladders in factories, power stations, and other land-based industrial facilities. Although the standards do not say that their application is limited to those settings, the record in this case presents an inadequate foundation for applying them to the *Irving Crown*. The ladders in question were on a towboat, not in a factory or other industrial plant, and when the substantial differences between those settings are borne in mind, McLean's explanation for applying the standards to the *Irving Crown* appears unpersuasive. He said only that a basic design goal for the shipboard ladders would be safety, a goal that the ANSI standards were intended to promote; from that identity of goals, McLean was willing to conclude that the ANSI standards were a relevant and useful guide for assessing the safety of the ladders on the *Irving Crown*. That the design of shipboard ladders would be animated by a concern for safety does not by itself make the ANSI standards relevant—to hold otherwise would ignore the differences between the types of activity involved.

Because the plaintiff did not show that the ANSI standards were relevant "in terms of \*\*\* conduct involved" (*Murphy v. Messerschmidt* (1977), 68 Ill. 2d 79, 84), the evidence should not have been admitted. See *Galindo v. Riddell, Inc.* (1982), 107 Ill. App. 3d 139 (standards applicable to headgear used for vehicular crashes properly excluded in action for injuries caused by allegedly defective football helmet); *cf. Rucker v. Norfolk & Western Ry. Co.* (1979), 77 Ill. 2d 434 (Federal standards concerning construction of liquefied petroleum gas tank cars admissible in action based on explosion of such a tank car); *Anderson v. Hyster Co.* (1979), 74 Ill.

2d 364 (no error in admitting conflicting testimony regarding applicability of certain standards to forklift trucks); *Davis v. Marathon Oil Co.* (1976), 64 Ill. 2d 380 (regulation governing location of gasoline fill pipes at service station admissible in action based on explosion occurring in delivery of gasoline to station); *Merchants National Bank v. Elgin, Joliet & Eastern Ry. Co.* (1971), 49 Ill. 2d 118 (State standards concerning railway crossings admissible in action based on accident at railway crossing).

We conclude that the plaintiff failed to demonstrate the relevance of the ANSI standards to the pilot-house ladders on the *Irving Crown*, and therefore the admission of the standards into evidence was error. The defendant contends that without the evidence of the ANSI standards, there was no basis for imposing liability here. We do not agree. The plaintiff testified that he slipped as he was climbing up to the pilot house, and he described the ladder as slippery. There were no other witnesses to the accident; the first mate descended the ladders immediately after the plaintiff's fall, and he found them to be clean and free of any oil or grease. Although the plaintiff's expert relied heavily on the ANSI standards, which we have found to have been improperly admitted here, the basis for his opinion was directed at what he perceived to be the inadequate depth and width of the ladders, matters that could sustain a judgment for the plaintiff. We are unable to conclude that the evidence, when viewed in its aspect most favorable to the plaintiff, so overwhelmingly favored the defendant that no contrary verdict could ever stand. See *Johnson v. Colley* (1986), 111 Ill. 2d 468, 474; *Pedrick v. Peoria & Eastern R.R. Co.* (1967), 37 Ill. 2d 494, 510; see also *Murphy v. Messerschmidt* (1977), 68 Ill. 2d 79 (though plaintiff's evidence of standards was not shown to be rel-

evant, and therefore was inadmissible, evidence did not warrant directed verdict in defendant's favor).

The defendant also argues that the trial court erred in the verdict forms that it submitted to the jury in this action. The defendant believes that the jury in effect received two plaintiff's verdict forms. The trial judge gave the jury three different verdict forms. Form "A" was a general verdict form for the plaintiff, with no reduction for his contributory negligence; form "B" was a general verdict form for the defendant; form "C" was a computational form, for the jury to use if it found the defendant liable and found the plaintiff contributorily negligent. Accordingly, the jurors were to use form "A" if and only if they found the defendant liable and the plaintiff not negligent, to use form "B" if and only if they found the defendant not liable, and to use form "C" if and only if they found the defendant liable and the plaintiff negligent. Thus, the verdict forms did not overlap and were not duplicative.

Verdict form "C," the computational form, was apparently modeled after Illinois Pattern Jury Instruction (IPI), Civil, No. A45.06 (1986 Supp.). IPI Civil No. A45.06 says in part:

> "First: Without taking into consideration the question of reduction of damages due to the negligence of the plaintiff, *if any*, we find that the total amount of damages suffered by the plaintiff as a proximate result of the occurrence in question is $_____." (Emphasis added.)

The court's verdict form "C" deleted the "if any" language, and it said:

> "First, without taking into consideration the question of reduction of damages due to the negligence of the plaintiff, we assess plaintiff's damages in the sum of $_____."

Thus, the trial judge transformed IPI Civil No. A45.06 into a verdict form useful only for the case in which the jury finds that the defendant is liable and the plaintiff is

negligent. This made necessary a separate verdict form for the case in which the defendant is liable and the plaintiff is not negligent.

It is not clear from the record here why the trial judge found it necessary or desirable to modify IPI Civil No. A45.06, once he decided to submit a computational form. (See *Hunter v. Sukkar* (1982), 111 Ill. App. 3d 169; see also *Ott v. Burlington Northern R.R. Co.* (1986), 140 Ill. App. 3d 277.) The record contains what apparently is only a part of the instructions conference, and there is no explanation of the trial judge's reasons for producing the hybrid instructions. We do not at this time determine whether the court's instructions were an improvement on the IPI instructions. In the interest of uniformity, however, Supreme Court Rule 239(a) (87 Ill. 2d R. 239(a)) provides that an otherwise applicable IPI jury instruction should be used "unless the court determines that it does not accurately state the law."

For the reasons stated, the judgments of the appellate and circuit courts are reversed and the cause is remanded for a new trial.

*Reversed and remanded.*

CLARK, C.J., and SIMON, J., took no part in the consideration or decision of this case.