534 S.E.2d 289

**Christine ELLEDGE and Ginger A. Sierra by her Guardian ad Litem, Christine Elledge, Appellants,**

**v.**

**RICHLAND/LEXINGTON SCHOOL DISTRICT FIVE, Respondent.**

**No. 3195.**

Court of Appeals of South Carolina.

Heard May 9, 2000.

Decided June 19, 2000.

Rehearing Denied Sept. 2, 2000.

James C. Anders, Thad L. Myers, Cheryl F. Perkins, all of James C. Anders, P.A. & Associates, of Columbia, for appellants.

M. Jane Turner and Andrea E. White, both of Duff, Dubberly, Turner, White & Boykin, of Columbia, for respondent.

HEARN, Chief Judge:

In this negligence action, Christine Elledge sued Richland/Lexington School District Five for injuries sustained by her daughter, Ginger Sierra, in a fall from playground equipment. The jury returned a verdict for the school district and Elledge appeals, arguing the trial judge erred in excluding evidence of playground industry standards and in charging the jury. We reverse and remand.

## FACTS/PROCEDURAL HISTORY

On December 9, 1994, Ginger Sierra, a nine-year-old fourth grader at Irmo Elementary School, slipped and fell while playing on the school playground's modified monkey bars. The bars were originally designed to stand approximately four and one-half feet off the ground with a bench running underneath. Children were encouraged to sit or lie on the bench and pull themselves along the length of the bars.

In 1991, after the school principal noticed some children climbing on top of the bars rather than lying on the bench, he contracted with a playground equipment sales representative to make safety recommendations. The representative, who

was not trained or licensed as an engineer, eventually modified the monkey bars by removing the bench and lowering the bars. The resulting apparatus formed an inclined "ladder," with parallel bars from twenty to thirty inches off the ground. Tires were also installed at each end of the bars for mounting and dismounting, and the children were encouraged to walk across from one end to the other. Despite the fact that the thin side bars were not intended as a walking surface, neither handrails nor a non-slip surface was added to the "new" monkey bars.

On the day of her accident, Ginger was walking across the bars after a light rain. Her foot slipped on a narrow bar, causing her to fall, and her right leg became trapped between the bars. As a result, Ginger suffered a severe "spiral-type" fracture in her right femur, resulting in damage to the thigh-bone's growth plate. Following a lengthy convalescence, doctors removed the growth plates in both her legs to prevent uneven growth.

On August 27, 1997, Elledge sued Richland/Lexington School District 5 (District) for negligence and gross negligence pursuant to S.C.Code Ann. §§ 15–78–40 and 15–78–60(25), respectively, of the South Carolina Tort Claims Act.[1] A jury trial was held June 15–17, 1998. Prior to trial, the District filed a motion in limine, which the trial court granted, to exclude "any testimony and/or documentary evidence" relating to the Consumer Products Safety Commission's (CPSC) guidelines for playground safety or the American Society for Testing and Materials' (ASTM) standards for playground equipment. The court adhered to its ruling during trial, and Elledge proffered excerpts from written and video depositions to support her claim that such evidence was relevant to the applicable standard of care.

---

1. Section 15–78–40 provides that political subdivisions of the State "are liable for their torts in the same manner and to the same extent as a private individual under like circumstances," while § 15–78–60(25) limits the Act's waiver of immunity regarding a responsibility or duty to supervise students, "except when the responsibility or duty is exercised in a grossly negligent manner." S.C.Code Ann. §§ 15–78–40 & 15–78–60(25) (Supp.1999).

On June 17, 1998, the jury returned a verdict for the District. The trial court denied all post-trial motions and this appeal followed.

## LAW/ANALYSIS

A trial court's decision to exclude evidence will not be disturbed on appeal absent an abuse of discretion amounting to an error of law. *See, Recco Tape & Label Co. v. Barfield,* 312 S.C. 214, 217, 439 S.E.2d 838, 840 (1994); *Krepps by Krepps v. Ausen,* 324 S.C. 597, 608, 479 S.E.2d 290, 297 (Ct.App.1996). To warrant reversal on appeal, a party must show both the error of the court's ruling and resulting prejudice. *Barfield,* 312 S.C. at 216, 439 S.E.2d at 840; *Doe v. Doe,* 324 S.C. 492, 499, 478 S.E.2d 854, 858 (Ct.App.1996).

Elledge first asserts the trial court erred in excluding evidence of the CPSC guidelines and ASTM standards, arguing such evidence was relevant to establish the appropriate standard of care. We agree.

Evidence of industry standards, customs, and practices is "often highly probative when defining a standard of care." 57A Am.Jur.2d *Negligence* § 185 (1999). Safety standards promulgated by government or industry organizations in particular are relevant to the standard of care for negligence. *See, Frazier v. Continental Oil Co.,* 568 F.2d 378, 382 n. 11 (5th Cir.1978) ("[E]vidence of custom within a particular industry, group, or organization is admissible as bearing on the standard of care in determining negligence." (quoting *Muncie Aviation Corp. v. Party Doll Fleet, Inc.,* 519 F.2d 1178, 1180 (5th Cir.1975))); *Brown v. Clark Equip. Co.,* 62 Haw. 530, 618 P.2d 267, 276 (1980) (finding safety data, codes or standards promulgated by voluntary industry organizations "admissible as evidence on the issue of negligence" and "as an alternative to or utilized to buttress expert testimony"); *Phelps v. Duke Power Co.,* 76 N.C.App. 222, 332 S.E.2d 715, 717 (1985) (lower court erred in excluding evidence of National Electrical Safety Code because such evidence "is instructive as to whether an electrical company used reasonable care" and thereby "admissible as an aid to the prudent or reasonable man rule"); *Stone v. United Eng'g,* 197 W.Va. 347, 475 S.E.2d 439, 454 (1996) ("Courts have become increasingly appreciative of the value of

national safety codes and other guidelines issued by governmental and voluntary associations to assist the trier of fact in applying the standard of due care in negligence cases."); *see also,* 57A Am.Jur.2d at § 186 (1999) ("A safety code ordinarily represents a consensus of opinion carrying the approval of a significant segment of an industry, and is not introduced as substantive law but most often as illustrative evidence of safety practices or rules generally prevailing in the industry that provides support for expert testimony concerning the proper standard of care." (internal citation omitted)).

In the present case, the trial court precluded Elledge's evidence of the CPSC guidelines and ASTM standards for playground safety based on the mistaken belief that the District must have adopted these national protocols before such evidence was admissible. This was error. The District cites no cases, and we are aware of none, mandating promulgation or implementation of national industry standards prior to their admission in a negligence case. To the contrary, while such proof might be necessary in attempting to establish negligence per se, it is not required when the evidence is offered to demonstrate an applicable standard of care. *See, Bragg v. Hi–Ranger, Inc.,* 319 S.C. 531, 546–47, 462 S.E.2d 321, 330 (Ct.App.1995) (approving admission of industry standards evidence, including evidence of manufacturer's safety organization, to establish standard of care in products liability action); *Taylor, Thon, Thompson & Peterson v. Cannaday,* 230 Mont. 151, 749 P.2d 63, 66 (1988) (Architects' Handbook of Professional Practice describing the standard of practice for architects in the United States was admissible as evidence of negligence despite fact that such was not conclusive proof thereof); *Ruffiner v. Material Serv. Corp.,* 116 Ill.2d 53, 106 Ill.Dec. 781, 506 N.E.2d 581, 584 (1987) (evidence of standards promulgated by industry, trade, or regulatory groups or agencies may be relevant and admissible to aid the trier of fact in determining the standard of care in a negligence action "even though the standards have not been imposed by statute or promulgated by a regulatory body and therefore do not have the force of law"); *Sawyer v. Dreis & Krump Mfg. Co.,* 67 N.Y.2d 328, 502 N.Y.S.2d 696, 493 N.E.2d 920, 925 (1986) (national standards were properly admitted and could be considered by the jury as some evidence of negligence but

they were not conclusive on the subject of negligence and the jury should have been so instructed); *Jorgensen v. Horton,* 206 N.W.2d 100, 103 (Iowa 1973) ("Violation of standards in such [private safety] codes is evidence on the issue of negligence but not negligence per se.").

■ Furthermore, the District's reliance on *Kiehner v. School Dist. of Philadelphia,* 712 A.2d 830 (Pa.Cmwlth.Ct. 1998) is misplaced. In *Kiehner,* the appeals court affirmed the exclusion of the Building Officials and Code Administrators National Building Code in a negligence suit against a Philadelphia school, because it had been *adopted by the city under express terms* that existing structures would not be required to retrofit or remodel to achieve compliance. As the school in question was built before the code was adopted, its admission into evidence was held to be unfairly prejudicial. *Kiehner,* 712 A.2d at 832. In addition, the court's opinion did not express the view that national standards and guidelines were inadmissible when they were *not* adopted by a particular defendant. Accordingly, we adhere to the view as expressed in the above cases, and as articulated by the New Jersey Supreme Court:

> [A] [safety] code is not introduced as substantive law, as proof of regulations or absolute standards having the force of law or scientific truth. It is offered in connection with expert testimony which identifies it as illustrative evidence of safety practices or rules generally prevailing in the industry, and as such it provides support for the opinion of the expert concerning the proper standard of care.

*McComish v. DeSoi,* 42 N.J. 274, 200 A.2d 116, 121 (1964).

■ The District further asserts even if it was error to exclude evidence of the applicable industry standards, Elledge suffered no prejudice as a result. We disagree.

Elledge proffered substantial video deposition testimony from Steven Bernheim, an expert in playground safety and equipment, concerning industry standards as outlined in the CPSC and ASTM. Specifically, Bernheim would have testified to the District's deviation from the accepted standard of care in the field. Moreover, Elledge intended to offer evidence that the District had notice of these standards, and that they were fully enforced regarding District purchases of *new* play-

ground equipment. The exclusion of this testimony was clearly prejudicial since such evidence would tend to show the District's compliance with industry standards, which directly conflicts with the District's assertion that such standards were never recognized.

Elledge lastly argues the trial court erred in charging the jury that the District could not be held liable for negligence in the absence of actual notice as required by S.C.Code Ann. § 15–78–60(16) (Supp.1999) of the South Carolina Tort Claims Act.[2] While we need not address this issue in light of our disposition above, for remand purposes, we find the case of *Strother v. Lexington County Recreation Comm'n.*, 332 S.C. 54, 504 S.E.2d 117, 123 (1998) instructive on the issue of actual notice.

Because we find the trial court committed reversible error in refusing to admit relevant evidence of industry standards, the judgment of the court below is

**REVERSED AND REMANDED.**

ANDERSON, and HUFF, JJ., concur.

---

**2.** S.C.Code Ann. § 15–78–60(16) limits the Act's waiver of immunity applied to the "maintenance, security, or supervision of any public property, intended or permitted to be used as a park, playground, or open area for recreation" when there is actual notice of the defect causing the loss to plaintiff.