573 S.E.2d 789

**Christine ELLEDGE and Ginger A. Sierra by her Guardian ad Litem, Christine Elledge, Respondents,**

v.

**RICHLAND/LEXINGTON SCHOOL DISTRICT FIVE, Petitioner.**

**No. 25559.**

Supreme Court of South Carolina.

Heard May 29, 2002.

Decided Nov. 25, 2002.

180

M. Jane Turner, Andrea E. White, and James D. Pike, of Duff, Turner, White & Boykin, L.L.C., of Columbia, for petitioner.

James C. Anders, Thad L. Myers, Cheryl F. Perkins, and Tressa T. Haynes, of James C. Anders, P.A. & Associates, of Columbia, for respondents.

Justice WALLER:

We granted a petition for a writ of certiorari to review the Court of Appeals' decision in *Elledge v. Richland/Lexington Sch. Dist. Five,* 341 S.C. 473, 534 S.E.2d 289 (Ct.App.2000). We affirm.

## FACTS

On December 9, 1994, nine-year-old Ginger Sierra (Ginger) slipped and fell on a piece of playground equipment at Irmo Elementary School where she attended fourth grade. The playground equipment was a metal monkey bar device which the children walked upon; it extended above the ground approximately two feet. As a result of the fall, Ginger broke her right leg. The growth plate in that leg was significantly damaged, and Ginger eventually underwent surgery in both legs to remove the growth plates.[1]

Ginger and her mother, Christine Elledge (collectively respondents), sued petitioner Richland/Lexington School District Five (the District) for negligence. A jury returned a verdict for the District. On appeal, the Court of Appeals reversed and remanded for a new trial. *Elledge, supra.*

At trial, James Shirley, the principal at Irmo Elementary since 1990, testified that shortly after he arrived at the school, he had concerns about the school's playground. He was especially concerned by the lack of a fall surface and by the height of some of the playground equipment. As to the monkey bar which Ginger fell on, Shirley stated that children had been walking on it and this was also a concern. In 1991, Shirley contacted Jim Mosteller who redesigned the playground. As part of the playground renovations, the monkey bar which Ginger fell on was modified by Mosteller. Originally, the monkey bar was higher and had a bench underneath it. As part of the modifications performed in 1991, the height was lowered from about four feet to two feet, and the bench was removed. On the modified monkey bar, students would walk or crawl across it, although there were no hand-held supports on the side. Shirley testified that he knew the children were walking across the apparatus after the modification.

Both of respondents' playground safety experts testified that the monkey bar was, in its original form, designed to develop children's upper body strength. Archibald Hardy stated that this piece of equipment was known as a "pull and

---

1. Removing the growth plates in both legs prevents uneven growth, but also retards growth in the legs. Ginger's doctor testified that this procedure would have the effect of making Ginger shorter than she would have been.

slide" and the children were supposed to lie back on the bench underneath the bars and pull themselves along the apparatus. According to Hardy, the original design "definitely wasn't for walking" because the metal rungs were small enough for children's hands and were "fairly slick." The modification to the equipment encouraged children to "run up and jump on top of it;" however, Hardy stated that children "shouldn't have been playing on top of it at all." Hardy, who sold to and installed playground equipment for Irmo Elementary, had visited the playground on several occasions since 1992, and had recommended to Shirley that all the older equipment on the playground be "bulldozed."

Steven Bernheim, respondents' other expert, similarly testified about the equipment and stated that it "was not meant as a climber." According to Bernheim, the equipment was safe as originally designed, but in its modified form, it was unsafe because the narrow bars were originally designed for hands, not feet, and no grit had been placed on the metal bars to prevent slipping.

Bernheim stated generally that the playground at Irmo Elementary did not meet the proper safety standards in the industry. Respondents sought, however, to introduce specific evidence regarding the Consumer Product Safety Commission (CPSC) guidelines for playground safety and the American Society for Testing and Materials (ASTM) standards for playground equipment. The trial court granted the District's motion in limine to exclude this evidence. At trial, respondents argued that this evidence was relevant to establishing the District's common law duty of care. The trial court found the evidence inadmissible because the guidelines were not "binding" on the District and the District had not "adopted" them in any way.

Respondents proffered the following evidence. Bernheim would have testified that in 1994, when Ginger fell, the CPSC guidelines and ASTM standards were in effect and would have applied to "any group ... utilizing the playground equipment for public use," including a school district. He stated that these guidelines are industry standards and are distributed to schools via superintendents' or principals' meetings. Significantly, Bernheim opined that the District should have had

policies and procedures in place for retrofitting existing equipment so that it complied with the guidelines. Furthermore, Bernheim believed the modified monkey bar did not comply with the national guidelines because there were no handrails and no grit on the walking surface. According to Bernheim, because Ginger's injury involved getting caught in an entrapment between the ladder areas, it was the type of injury the guidelines are designed to prevent. While Bernheim acknowledged that the industry standards were guidelines only, he stated they are what the playground equipment industry "stands by."

Respondents also proffered testimony from the District's purchasing coordinator, Joe Tommie. According to Tommie, the District would specify in its bids for purchasing *new* playground equipment that the equipment must meet the CPSC guidelines and ASTM standards. He stated: "That's normally the standard we use to ensure that we purchase safe equipment." [2]

On appeal, respondents argued the exclusion of this evidence was prejudicial error. The Court of Appeals agreed. Stating that "[e]vidence of industry standards, customs, and practices is 'often highly probative when defining a standard of care,'" the Court of Appeals held the trial court erred by excluding evidence of the CPSC guidelines and ASTM standards. *Elledge,* 341 S.C. at 477, 534 S.E.2d at 290–91 (citation omitted). The Court of Appeals found the trial court was under "the mistaken belief that the District must have adopted these national protocols before such evidence was admissible.... [W]hile such proof might be necessary in attempting to establish negligence *per se,* it is not required when the evidence is offered to demonstrate an applicable standard of care." *Id.* at 478, 534 S.E.2d at 291. As to the District's argument there was no prejudice from any error, the Court of Appeals stated that the "exclusion of this testimony was clearly prejudicial since such evidence would tend to show the District's compliance with industry standards, which

---

**2.** We note that while this portion of Tommie's testimony was part of the proffer, and therefore excluded by the trial court's ruling, it nevertheless was brought out before the jury.

directly conflicts with the District's assertion that such standards were never recognized." *Id.* at 480, 534 S.E.2d at 292.

## ISSUE

Did the Court of Appeals correctly decide that the trial court's exclusion of the CPSC guidelines and ASTM standards evidence was reversible error?

## DISCUSSION

The District argues that the trial court correctly excluded the CPSC guidelines and ASTM standards evidence. Specifically, the District maintains respondents failed to establish that these guidelines were accepted and used by school districts in South Carolina to determine the safety of *existing* playground equipment. In addition, the District contends that even if the trial court erred, the error was not prejudicial. We disagree.

To establish a cause of action in negligence, a plaintiff must prove the following three elements: (1) a duty of care owed by defendant to plaintiff; (2) breach of that duty by a negligent act or omission; and (3) damage proximately resulting from the breach of duty. *E.g., Bloom v. Ravoira,* 339 S.C. 417, 529 S.E.2d 710 (2000). Evidence is relevant and admissible if it has any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence. Rules 401, 402, SCRE. It is well settled that the admission and rejection of testimony is largely within the trial court's sound discretion, the exercise of which will not be disturbed on appeal absent an abuse of that discretion. *E.g., Pike v. South Carolina Dep't of Transp.,* 343 S.C. 224, 234, 540 S.E.2d 87, 92 (2000).

In our opinion, respondents' proffered evidence was relevant to, and admissible on, the first required element of negligence—the District's duty of care to respondents. *See Bloom v. Ravoira, supra;* Rules 401, 402, SCRE. We agree with Chief Judge Hearn's observation that the trial court was under "the mistaken belief that the District must have

adopted these national protocols before such evidence was admissible." *Elledge,* 341 S.C. at 478, 534 S.E.2d at 291.

■ As recognized by the Court of Appeals, the general rule is that evidence of industry safety standards is relevant to establishing the standard of care in a negligence case. *See, e.g., McComish v. DeSoi,* 42 N.J. 274, 200 A.2d 116, 120–21 (1964) (holding that construction safety manuals and codes were properly admitted as objective standards of safe construction); *Walheim v. Kirkpatrick,* 305 Pa.Super. 590, 451 A.2d 1033, 1034–35 (1982) (holding that safety standards regarding the safe design and use of trampolines, including ASTM standards, were admissible on the issue of the defendants' negligence, even though the defendants were unaware of the standards); *Stone v. United Eng'g,* 197 W.Va. 347, 475 S.E.2d 439, 453–55 (1996) (no error to admit evidence of safety standards for the design and guarding of conveyors even though the standards had not been imposed by statute and did not have "the force of law"); *see generally* Daniel E. Feld, Annotation, *Admissibility in Evidence, on Issue of Negligence, of Codes or Standards of Safety Issued or Sponsored by Governmental Body or by Voluntary Association,* 58 A.L.R.3d 148, 154 (1974) (modern trend is to admit safety codes on the issue of negligence). This kind of evidence is admitted not because it has "the force of law," but rather as "illustrative evidence of safety practices or rules generally prevailing in the industry." *McComish v. DeSoi,* 200 A.2d at 121.

Indeed, the District even acknowledges this is the general rule. Respondents' expert, Bernheim, laid an adequate foundation for the admission of these safety standards when he stated they: (1) were in effect at the time of Ginger's accident,[3] and (2) would have applied to *any group using playground equipment for public use,* including a school district. Thus, the Court of Appeals correctly held that the trial court erred by excluding evidence of the CPSC guidelines and ASTM standards.

The District, however, argues this evidence was inadmissible because respondents did not show that school districts

---

3. Bernheim would have testified that the CPSC guidelines were first published in 1981 and that ASTM standards applied to schools since at least 1993.

generally accepted or followed the guidelines with regard to *existing* playground equipment.[4] We find this argument completely unavailing. Since the evidence showed the District followed the CPSC guidelines when purchasing *new* playground equipment, and the guidelines are intended for general playground safety which logically includes the *maintenance of existing* playground equipment, the District's contention that the safety standards somehow did not apply to it on existing equipment is simply untenable. It is clear to us that a public school is exactly the type of entity to which the public playground safety guidelines should, and do, apply. Simply because the District did not utilize the guidelines in 1994 with regard to existing equipment does not mean that it should not have.[5]

We find this evidence is highly probative on the issue of defining the District's *duty of care.* Rules 401, 402, SCRE (evidence is relevant and admissible if it has any tendency to make the existence of any fact of consequence to the action more or less probable than it would be without the evidence);

4. The District contends that Bernheim "refused to discuss" the application of the CPSC guidelines and ASTM standards to existing equipment. This is an inaccurate portrayal of the record. As stated above, Bernheim would have testified that with regard to existing equipment, the District should have had policies in place to ensure compliance with the industry standards. Specifically, we note that the excluded testimony included the following exchange:

Q. And again regarding the compliance for the standards for existing playground equipment, should [the District] have had in place policies and procedures?
A. I think so, in my humble and professional opinion, yes.

Nonetheless, the District makes much of a comment Bernheim made at a later point in his proffered testimony. Bernheim stated that, in his experience, all requests for new playground equipment purchases required that the equipment conform with the CPSC guidelines and ASTM standards. In this context, when the District asked whether this was for new equipment, Bernheim replied: "For the purchase of new equipment. I don't want to discuss retrofitting." Despite Bernheim's response that he did not want to discuss retrofitting, Bernheim had already testified as to his opinion regarding the District's duty to maintain existing equipment and the application of the standards to existing equipment. The District cannot isolate this portion of Bernheim's testimony and, by so doing, erase the other pertinent testimony on this issue which was offered by respondents.

5. Indeed, since July 1997, the District has utilized the CPSC guidelines in conjunction with the inspection and maintenance of its playgrounds.

*see also Elledge,* 341 S.C. at 477, 534 S.E.2d at 290 ("Evidence of industry standards, customs, and practices is 'often highly probative when defining a standard of care.' ") (quoting 57A Am.Jur.2d Negligence § 185 (1999)). Consequently, we hold the trial court abused its discretion by excluding this evidence.[6]

The District further argues that any error made by the trial court did not result in prejudice to respondents. The District contends that the evidence was cumulative to the admitted testimony of respondents' experts and the expert testimony was limited only by excluding specific references to the safety standards. We disagree.

▉ Evidence of objective safety standards is generally offered "in connection with expert testimony which identifies it as illustrative evidence of safety practices or rules generally prevailing in the industry, *and as such it provides support for the opinion of the expert concerning the proper standard of care.*" *McComish v. DeSoi,* 200 A.2d at 121 (emphasis added); *see also Brown v. Clark Equip. Co.,* 62 Haw. 530, 618 P.2d 267, 276 (1980) (evidence of safety codes is "admissible as an alternative to *or* utilized *to buttress* expert testimony") (emphasis added).

▉ Respondents sought to introduce evidence of industry standards to identify and establish the duty of care owed by the District to respondents. According to respondents' expert, the modified monkey bar did not comply with the guidelines. According to the District's purchasing coordinator, the District utilized the guidelines to ensure the safety of

---

6. The dissent, adopting the District's argument, states respondents did not show that the guidelines applied to *existing* playground equipment. However, because Bernheim specifically testified that the playground equipment guidelines applied to any group using playground equipment for public use, we find it irrelevant that he did not specifically testify "the guidelines applied to existing equipment." It is beyond dispute that Bernheim's testimony established that the guidelines were in effect at the time of Ginger's accident, they applied to public playground equipment, schools would have had notice of the guidelines, and the District should have had procedures in place to guarantee compliance with the guidelines. Moreover, testimony was admitted that the District *required* that new equipment comply with the guidelines. We therefore believe this evidence, when taken together, establishes the guidelines applied to existing equipment.

new equipment purchases. The import of the expert's evidence is clear. Respondents sought to show that the same standards that were used to purchase safe new equipment, *should have been* used to safely modify and/or maintain the existing equipment.

Furthermore, this type of evidence constitutes an objective standard and as such would have greatly enhanced the opinions offered by respondents' experts. We therefore disagree with the District's argument that the evidence would have been cumulative to the experts' testimony. One of the main purposes of industry standard evidence is to provide support for an expert's opinion on what the applicable standard of care is, and thus, the evidence is not merely cumulative to the expert's testimony. *See id.*

In addition, we note that the bulk of the experts' testimony went to the element of breach of duty whereas the specific evidence of industry standards was intended to establish *the applicable duty of care.* In other words, while respondents' experts were allowed to offer their opinions that the equipment did not conform with the industry's guidelines and was not meant to be walked upon, this testimony primarily relates to breach of a duty, not to demonstrating precisely what the objective duty of care was. Since the evidence at issue went to a different element on the negligence cause of action—duty versus breach—clearly the evidence cannot be considered cumulative.

Accordingly, we hold the trial court's error in excluding this evidence prejudiced respondents' case.

## CONCLUSION

The general rule is that evidence of industry safety standards is admissible to establish the standard of care in a negligence case. The evidence of CPSC guidelines and ASTM standards which respondents sought to have admitted in the instant case is exactly the type of evidence contemplated by this general rule. The Court of Appeals correctly held the trial court committed reversible error in excluding the evidence. Therefore, the Court of Appeals' opinion is

**AFFIRMED.**

TOAL, C.J., BURNETT and PLEICONES, JJ., concur.

MOORE, J., dissenting in a separate opinion.

Justice MOORE (dissenting):

I respectfully dissent because I disagree that the Court of Appeals correctly found the trial court had committed reversible error by excluding evidence of the CPSC guidelines and ASTM standards (hereinafter collectively referred to as the guidelines). While the majority opinion and the decision of the Court of Appeals focus on whether the guidelines were adopted by Richland/Lexington School District Five (the District), I believe this is an improper predicate upon which to base the ruling. The more appropriate question is whether the guidelines are applicable to the District's *existing* playground equipment.

Given that respondents did not present evidence the guidelines were applicable to the *existing* playground equipment on the District's property, the trial court properly disallowed evidence regarding those guidelines. While respondents' expert, Steven Bernheim, testified the District should have had policies and procedures regarding the existing equipment's compliance to the guidelines, Bernheim never testified, nor was it shown as the majority opinion contends, that the guidelines in fact applied to existing playground equipment. Bernheim merely testified the District should have had procedures in place for retrofitting existing equipment in accordance with the guidelines. However, he did not opine that the guidelines *applied* to existing playground equipment. Accordingly, the trial court did not abuse its discretion when it rejected the proffered testimony. *See Pike v. South Carolina Dep't of Transp.*, 343 S.C. 224, 540 S.E.2d 87 (2000) (admission and rejection of testimony is largely within trial court's sound discretion, the exercise of which will not be disturbed on appeal absent abuse of that discretion).

Further, even if the trial court had committed error by not admitting the evidence, respondents were not prejudiced by the alleged error. The proffered evidence was cumulative to the admitted testimony of respondents' experts. At trial, Bernheim testified that, according to the standards and practices of the industry, [the playground equipment] did not meet

the proper safety standards. Further, the District's equipment purchaser, Joe Tommie, testified, in bids for purchasing *new* playground equipment, the District specified the new equipment must meet the guidelines. Therefore, while specific evidence regarding the guidelines was not admitted, respondents were still able to show that the equipment did not meet the standards set by the playground equipment industry. Additionally, both Bernheim and respondents' other expert, Archibald Hardy, testified the monkey bar was not meant to be walked upon. Hardy also testified that he had recommended to the Irmo Elementary School principal that all of the older equipment on the playground be bulldozed. Given the above testimony, additional information regarding the guidelines would not have bolstered respondents' case any further.

While the majority opinion contends respondents were prejudiced by the trial court's decision because the bulk of the experts' testimony went to the element of breach of duty and that evidence of the guidelines would have established the applicable duty of care, respondents were able to present evidence of the applicable duty of care through the testimony of Bernheim and Tommie as noted above. Consequently, I do not find this contention persuasive as to why respondents were prejudiced by the alleged trial court error.

For the above stated reasons, I would reverse the Court of Appeals' decision because the trial court did not abuse its discretion by rejecting respondents' proffered testimony.