2230

MOORE ELECTRIC SUPPLY, Inc., Respondent-Appellant v. Tom E. WARD, Hilary Ward, Mike Ellis and Tracee Powell, d/b/a RDC Constructors, South Carolina Highway Department, and St. Paul Fire & Marine Insurance Co., of whom St. Paul Fire & Marine Insurance Co. is, Appellant-Respondent.

(450 S.E. (2d) 96)

Court of Appeals

*L. Franklin Elmore, Neil S. Haldrup* and *John St. Clair White,* all of *Ogletree, Deakins, Nash, Smoak & Stewart,* Greenville, *for appellant-respondent.*

*Steven L. Smith* and *Joe S. Dusenbury, Jr.,* Charleston, *for respondent-appellant.*

Heard June 7, 1994.

Decided Oct., 3, 1994.

SHAW, Judge:

Moore Electric Supply, Inc. sued Tom Ward and others to recover an amount allegedly owed for material Moore Electric supplied to a State Highway Department project. Moore later added St. Paul Fire & Marine Insurance Co. as a defendant and sought to recover against a labor and materials bond St. Paul issued for the project. After confessions of judgment and motions to dismiss, St. Paul remained the lone defendant in the case. On April 30, 1993, the trial court, sitting without a jury, entered judgment in favor of Moore Electric. St. Paul appeals the judgment, and Moore appeals the court's failure to award attorney's fees and prejudgment interest. We affirm.

## SCOPE OF REVIEW

A bond is nothing more than an agreement or contract under seal to pay money or to do some thing, and an action upon the bond is an action at law. *Anderson v. Aetna Casualty & Surety Co.*, 175 S.C. 254, 178 S.E. 819 (1935). In an action at law, tried without a jury, the findings of fact of the judge will not be disturbed on appeal unless found to be without any evidence with reasonably supports them. *Republic National Bank v. DLP Industries, Inc.* — S.C. —, 441 S.E. (2d) 827 (1994).

## FACTS

The South Carolina Department of Highways and Public Transportation entered into a contract with L-J, Inc., to construct a weigh station on I-26. Pursuant to statute, L-J obtained a payment bond from St. Paul Fire and Marine Insurance Company, to cover the labor and materials supplied to the project. L-J subcontracted a portion of the work to RDC Constructors, Inc., which sub-subcontracted with White Electric Company to supply labor for the electrical portion of the contract.

White Electric ordered supply materials from Moore Electric for the project. Because White Electric was in poor financial shape, RDC agreed to pay Moore Electric directly for items supplied for use on the project. Moore Electric extended an open line of credit to RDC to finance the purchases. Moore Electric's invoices stated the material was sold to RDC and was shipped to the weigh station site. Although RDC made some payments to Moore Electric, RDC failed to pay for all material it used, and left a balance due to Moore Electric of $40,751.74, of which $40,330.15 represented materials actually consumed on the project.

The trial court ruled that, although Moore Electric was a sub-subcontractor, it was also a supplier to RDC, and supplied materials pursuant to a contract with RDC and RDC's credit application. The court found the relationship between RDC and Moore Electric was not terminated on January 23, 1991, as St. Paul contended and Moore Electric continued to furnish materials, the last supply date being April 22, 1991. Hence, the court concluded, the July 9, 1991 notice given to St. Paul was within 90 days. The court found the statute involved is

similar to the mechanic's lien statute, and runs from the last day materials were supplied to the project. Although each item might be separate and Moore Electric did not have any continuing obligation to supply items for the project, the court held the statute allows recovery of the entire amount.

The court further found RDC owed Moore Electric the entire amount claimed, with the exception of two items totalling $355.96. The court found the pull line and the circuit tracer kit were tools which were not totally consumed but could be reused on other projects. Hence, the court ruled Moore Electric may recover $40,330.15.

Lastly, the trial court held St. Paul did not fail to make a fair investigation and did not unreasonably refuse to pay the claim. The court stated St. paul had several defenses, and, although the court ruled against St. Paul, this did not mean the defenses were not viable. The court added that Moore Electric's own witnesses testified the claim included tools which could be reused, and therefore the whole amount sought was not awarded, implying the sum stated was not liquidated since part was in dispute. For this reason, the court refused to award statutory interest. The court further found Moore Electric was not entitled to attorney's fees.

### APPEAL OF ST. PAUL FIRE & MARINE INSURANCE CO.

St. Paul argues Moore Electric failed to prove it supplied materials to the weigh station project, and that the materials were actually incorporated into the project. We disagree. Under our limited scope of review, we find the record contains evidence which reasonably supports the trial court's finding. The invoices themselves indicate the materials were delivered to the weigh station on behalf of White Electric and RDC. Moore Electric's credit manager, Goldie Harmon, identified the series of invoices, and testified the materials were designated for the project and he believed they were so used. Jerry Haskell, manager of Moore Electric's Charleston office, testified that, in his opinion, the items supplied were those which ordinarily would be needed for this project. It was for the court, as trier of fact, to resolve any issue of credibility. In this case, the court did so in favor of Moore Electric.

St. Paul next contends Moore Electric failed to establish it entered into a direct contractual relationship with RDC and, therefore, may not recover against the bond under S.C. Code Ann. § 57-5-1660 (1991). St. Paul claims the evidence demonstrates Moore Electric had a direct contractual relationship only with White Electric, a sub-subcontractor, and therefore may not proceed under the statute. We disagree.

S.C. Code Ann. § 57-5-1660 (1991) provides, in part:

(a) The South Carolina Department of Highways and Public Transportation[1] shall require that the contractor on every public highway construction contract, exceeding ten thousand dollars, furnish the South Carolina Department of Highways and Public Transportation, county, or road district the following bonds, which shall become binding upon the award of the contract to such contractor:

(2) A payment bond with a surety or sureties satisfactory to the awarding authority, and in the amount of not less than fifty per cent of the contract, for the protection of all persons supplying labor and materials in the prosecution of work provided for in the contract for the use of each such person.

(b) Every person who has furnished labor or material in the prosecution of the work provided for in such contract, in respect of which such a bond has been furnished under this section and who has not been paid in full therefor before the expiration of a period of ninety days after the day on which the last of the labor was done or performed by him or material was furnished or supplied by him for which such claim is made, shall have the right to sue on such bond for the amount, or the balance thereof, unpaid at the time of the institution of such suit and to prosecute such action to final execution and judgment for the sum or sums justly due him; *provided,* **however, that any person having direct contractual rela-**

---

[1] The section was amended effective July 1, 1993, to change the references to the "South Carolina Department of Highways and Public Transportation" to "Department of Transportation." *See* S.C. Code Ann. § 57-5-1660 (Supp. 1993).

tionship with a sub-contractor but no contractual relationship expressed or implied with the contractor furnishing the bond shall have a right of action upon the bond upon giving written notice to the contractor within ninety days from the date on which such person did or performed the last of the labor or furnished or supplied the last of the material for which claim is made, stating with substantial accuracy the amount claimed and the name of the party to whom material was furnished or supplied or for whom labor was done or performed. No suit under this section shall be commenced after the expiration of one year after the date of the final settlement of the contract.

(Emphasis added.)

Assuming as St. Paul contends, but without deciding, that the statute allows only those who have a direct contractual relationship with a contractor or subcontractor to sue on the bond, but not a subcontractor's supplier, under our limited scope of review in the action at law, we find the record contains evidence to support the trial court's finding that Moore Electric actually had a direct agreement with RDC, a subcontractor. RDC agreed to be responsible for direct payment to Moore Electric for the materials Moore Electric supplied to the project, since White Electric was in poor financial shape. Moore Electric supplied the materials based upon RDC's line of credit under a credit application submitted by Tom Ward, RDC's president. RDC paid Moore Electric directly for materials used on the project. Many of the invoices indicate the materials were shipped to "RDC Constructors, c/o White Electric Service" and all of them indicated the material was sold to RDC.

St. Paul further contends Moore Electric's notice was not timely. St. Paul argues that Moore Electric put a "hold" on RDC's account as of January 23, 1991, and, thus, this was the date of termination of any contractual relationship which existed. St. Paul claims Moore Electric's notice accordingly had to be given within ninety days of January 23, 1991. This argument ignores the precise language of the statute, however, that notice must be given "before the expi-

ration of a period of ninety days after the day on which the last of the labor was done or performed by him or material was furnished or supplied by him for which such claim is made. . . ." There is evidence Moore actually last supplied materials under the agreement on April 22, 1991, so that its notice on July 9, 1991 was timely. St. Paul asserts that any materials supplied after the account was placed on hold were "unauthorized" or were supplied solely to White Electric. We disagree. The credit application for the account with Moore Electric provides in part that the guarantee will remain in full force and effect until written notice of its termination is received. Tom Ward of RDC testified he never sent written notice of termination of the account to Moore Electric. Further, the record shows that although RDC made a verbal request for Moore Electric to close the account, some items were shipped and billed because they had already been ordered from the manufacturers and were in the stream of shipping or had been delivered to the site and possibly installed. Based upon this evidence, the trial court apparently believed these items had been ordered and identified to the contract prior to RDC's request that the account be closed. Under the circumstances of this case, we find the record supports the trial court's conclusion.

Finally, St. Paul claims the trial court erred in finding all the invoices represent one contract. St. Paul claims each invoice represents a separate independent agreement, and therefore Moore Electric was required to make a claim against the bond within ninety days of delivery under each separate invoice. We disagree. Section 57-5-1660 states the claimant must have furnished labor or materials in the prosecution of the work provided for in a Highway Department contract, and any claimant having a direct contractual relationship with a subcontractor rather than the contractor furnishing the bond must give the notice within ninety days from the date on which the person *last performed labor or supplied materials for which claim is made*. The record contains evidence that Moore Electric continuously delivered materials White Electric ordered under the line of credit requested by RDC, although each shipment was separately invoiced. This is sufficient to support the trial court's ruling that Moore Electric provided the materials under a single agreement.

## APPEAL OF MOORE ELECTRIC SUPPLY, INC.

Moore Electric appeals the trial court's refusal to
■ award it attorney's fees and statutory interest. We find
no error.

S.C. Code Ann. § 27-1-15 (1991) provides:

Whenever a contractor, laborer, design professional, or materials supplier has expended labor, services, or materials under contract for the improvement of real property, and where due and just demand has been made by certified or registered mail for payment for the labor, services, or materials under the terms of any regulation, undertaking, or statute, it is the duty of the person upon whom the claim is made to make a reasonable and fair investigation of the merits of the claim and to pay it, or whatever portion of it is determined as valid, within forty-five days from the date of mailing the demand. If the person fails to make a fair investigation or otherwise unreasonably refuses to pay the claim or proper portion, he is liable for reasonable attorney's fees and interest at the judgment rate from the date of the demand.

(Emphasis added.)

Moore Electric argues the statute imposes an affirmative duty on the person upon whom the demand is made to make a fair and reasonable investigation of the claim and to pay whatever is not in dispute within 45 days, or be liable for attorney's fees and interest. Moore Electric claims it was clear from the record that St. Paul violated the duty imposed upon it by the statute. Moore points out that St. Paul did not call any witnesses or submit any evidence as to what, if any, investigation it undertook. The crux of this argument is Moore's assertion that St. Paul had the initial burden of coming forward with evidence of its investigation. St. Paul claims Moore had ample opportunity to conduct discovery or to call witnesses at trial so as to determine the reasonableness of St. Paul's investigation and that Moore Electric should have presented evidence that St. Paul failed to respond to the claim, or that any investigation was not reasonable.

We hold Moore Electric, as the party seeking the
■ award of attorney's fees and interest under the statute,
had the initial burden of presenting prima facie evi-

dence that St. Paul did not make a fair and reasonable investigation. Because this was an issue in the case, Moore Electric could have used discovery to ascertain the scope of St. Paul's investigation and presented the evidence to the trier of fact to determine whether the steps taken were "reasonable and fair." Since Moore Electric presented no evidence on this issue, it failed to bear its burden of proof. We further find there is evidence to support the trial judge's ruling that St. Paul did not unreasonably refuse to pay the claim. Accordingly, the trial court correctly denied this relief.

Accordingly, the judgment is

Affirmed.

HOWELL, C.J., and CURETON, J., concur.