THE STATE OF SOUTH CAROLINA

THE STATE OF SOUTH CAROLINA
In The Court of Appeals

 
 
 
Capital Coatings & Co., Inc.,       
Respondent/Appellant,
 
 
 

v.

 
 
 
Browning Construction Company & United 
 States Fidelity & Guaranty Company,       
Appellants/Respondents.
 
 
 

Appeal From Horry County
J. Stanton Cross, Jr., Circuit Court 
 Judge

Unpublished Opinion No. 2003-UP-021
Submitted October 8, 2002  Filed January 
 8, 2003

AFFIRMED

 
 
 
Brian P. Robinson, of Columbia, for respondent/appellant.
Robert L. Barnett, of Myrtle Beach, for appellants/respondents.
 
 
 

 PER CURIAM:  Capital 
 Coatings & Company, Inc., (Subcontractor) sued Browning Construction Company 
 (Contractor) alleging causes of action for breach of contract and quantum 
 meruit.  Subcontractor also sued Contractors surety, United States Fidelity 
 and Guaranty Company (USF&G) seeking attorneys fees.  Contractor counterclaimed 
 seeking damages for breach of contract and attorneys fees.  The master-in-equity 
 ruled in favor of Subcontractor finding Contractor breached the contract.  Both 
 the Contractor and Subcontractor appeal.  We affirm.
FACTS/PROCEDURAL BACKGROUND
Contractor was the prime contractor hired to build 
 North Myrtle Beach Middle School (the School).  On August 23, 1996, Contractor 
 hired Subcontractor to paint the walls.  Preparation of the walls for painting, 
 called point-up work, [1] was 
 to be performed by another entity under Contractors supervision.  
On March 24, 1997, Subcontractor temporarily withdrew 
 from the project claiming Contractor failed to prepare the walls properly for 
 painting.  In response, Contractor terminated Subcontractor.  
Subcontractor notified USF&G of its claim for 
 payment.  USF&G conducted an investigation by discussing the claim with 
 representatives of Contractor. Contractor informed USF&G that Contractor 
 did not pay Subcontractor because Subcontractor did not complete the project.  
 USF&G did not interview the project architect or any employee of Subcontractor.  
 Based on this information, USF&G denied Subcontractors claim.
Subsequently, Subcontractor sued Contractor seeking damages 
 for breach of contract and recovery in quantum meruit.  Subcontractor also sued 
 USF&G seeking attorneys fees, claiming USF&G did not conduct a reasonable 
 investigation pursuant to South Carolina Code Annotated section 27-1-15 (Supp. 
 2001).  Contractor counterclaimed, seeking damages for breach of contract and 
 attorneys fees.  
The case was referred to the master, who 
 concluded: Contractor breached the contract by failing to adequately prepare 
 the walls for painting; Subcontractor failed to mitigate its damages as to unused 
 paint and was thus not entitled to the damages therefrom; and Subcontractor 
 was not entitled to attorneys fees from Contractors surety for failing to 
 perform a reasonable investigation.
LAW/ ANALYSIS
A.          Contractors Issues on Appeal

 1.               
Subcontract 
 

Contractor argues the master abused his discretion 
 in ruling a written subcontract submitted to Subcontractor by Contractor did 
 not form a part of the agreement between the parties.  We disagree.
A contract action is an action at law. Hofer 
 v. St. Clair, 298 S.C. 503, 508, 381 S.E.2d 736, 739 (1989). In an action 
 at law, tried without a jury, a judges findings of fact will not be disturbed 
 unless found to be without any evidence which reasonably supports them.  Republic 
 Natl Bank v. DLP Indus., Inc., 314 S.C. 108, 110, 441 S.E.2d 828, 829 (1994).  
 The existence of a contract is a question of fact.  Columbia Hyundai, Inc., 
 v. Carll Hyundai, Inc., 326 S.C. 78, 82, 484 S.E.2d 468, 470  (1997); Small 
 v. Spring Indus. Inc., 292 S.C. 481, 483, 357 S.E.2d 452, 454 (1987) (stating 
 under the common law, the issue of existence of a contract is an issue of fact 
 when its existence is questioned and the evidence is either conflicting or admits 
 of more than one inference).  
On August 23, 1996, Contractor and Subcontractor signed an 
 Acceptance of Estimate Bid (the Agreement).  Pursuant to the Agreement, Contractor 
 was responsible for preparing the walls of the School for paint, and Subcontractor 
 agreed to paint and damp-proof the walls.  Additionally, the Agreement specified 
 walls should not be painted until being adequately prepared.  Moreover, Dexter 
 A. Weaver, an officer, director, and shareholder of Subcontractor, testified 
 the Agreement was the contract between the parties.  
Approximately five months after Subcontractor began working, 
 Contractor submitted a proposed subcontract (subcontract) to Subcontractor.  
 Neither Subcontractor nor Contractor signed the Subcontract. 
Donald Browning, the president of Contractor, testified the 
 subcontract was not signed because it was subject to negotiation.  Furthermore, 
 Browning wrote a letter to Subcontractor stating the payment arrangements in 
 the Agreement controlled because the subcontract was never signed.
It is well settled in South Carolina that in order for there 
 to be a binding contract between parties, there must be a mutual manifestation 
 of assent to the terms.  Edens v. Laurel Hill, Inc., 271 S.C. 360, 364, 
 247 S.E.2d 434, 436 (1978); Hughes v. Edwards, 265 S.C. 529, 535, 220 
 S.E.2d 231, 234 (1975) (For a contract to arise there must be an agreement 
 between two or more parties.).  
The master ruled the subcontract forwarded by Contractor 
 to Subcontractor five months after the Acceptance of Bid was signed did not 
 constitute the agreement between the parties because the document was unsigned 
 and there was no meeting of the minds as to its terms.  We conclude the aforementioned 
 evidence is sufficient to support that determination. [2]   Therefore, the Master did not abuse his discretion.

 II.              
 Breach of Contract

Contractor argues the master erred in finding: Contractor 
 failed to provide a sufficient area for Subcontractor to work; Contractor failed 
 to properly coordinate the work of its subcontractors; Subcontractor was at 
 all times ready, willing, and able to perform the painting; and Subcontractor 
 did timely perform.  We disagree.
A contract action is an action at law. Hofer, 298 
 S.C. at 508, 381 S.E.2d at 739. In an action at law, tried without a jury, a 
 judges findings of fact will not be disturbed unless found to be without any 
 evidence which reasonably supports them.  Republic, 314 S.C. at 110, 
 441 S.E.2d at 829.
Contractor and Subcontractor signed the Agreement on 
 August 23, 1996.  The Agreement provided Contractor was responsible for preparing 
 the walls of the School for paint, and Subcontractor agreed to paint and damp-proof 
 the walls.  Additionally, the Agreement specified walls should not be painted 
 until they were adequately prepared.  
According to Subcontractor, in December 1996, Subcontractor 
 painted one wing of the School at the direction of Contractor.  The project 
 architect subsequently rejected the work because the walls had not been adequately 
 prepared before painting.  Subcontractor subsequently repainted the walls, and 
 Contractor refused to pay a portion of the costs.  
On January 27, 1997, Subcontractor notified Contractor 
 it was temporarily withdrawing from the job claiming the Contractor was violating 
 the Agreement by failing to timely prepare the walls for painting. 
On January 31, 1997, the project architect wrote a 
 letter to Contractor stating Contractor was not adequately supervising the preparation 
 of the walls.  The architect noted that Subcontractor was being asked to paint 
 walls that were not properly prepared.  At trial, the architect reaffirmed this 
 in his testimony.
On February 3, 1997, Contractor and Subcontractor 
 held a meeting with the architect in which the standard for preparing the walls 
 was clearly established.  However, Subcontractor testified that Contractor continuously 
 failed to prepare the walls in a timely manner.  According to Subcontractors 
 testimony, there were days when painting crews were sent home because no walls 
 were ready to be painted.  Additionally, there were days when painting crews 
 were not sent because there was no work for them.  
Joan Hawthorne, a painter hired by Contractor after 
 Subcontractors termination, reported numerous problems with the preparation 
 work. She testified every room of the school needed additional preparation work. 

Furthermore, the project architect testified Subcontractor 
 had enough painters on the job to paint the areas that were ready to be painted.  
 Additionally, Contractor admitted that Subcontractor was not obligated to have 
 a specific number of painters on the job when there was not work for the painters.  

On March 24, 1997, Subcontractor notified Contractor 
 it was temporarily withdrawing from the project, claiming Contractor was not 
 performing its duty to assure proper preparation of the walls in a timely manner.  
 Contractor then notified Subcontractor it was terminated.
Based upon the above evidence, the master found 
 the Contractor failed to provide a sufficient area for Subcontractor to work 
 and failed to properly coordinate the work of its subcontractors.  The master 
 concluded Subcontractor was at all times ready, willing, and able to perform 
 the painting, and Subcontractor timely painted the walls.  This evidence is 
 sufficient to support these conclusions, and we hold the Master did not abuse 
 his discretion in so ruling.

 III.           Admissibility 
 of Evidence

Contractor argues the master erred in excluding 
 photographic evidence of Subcontractors painting work at another, unrelated 
 location as proof of Subcontractors standards for wall preparation.  We disagree.
A trial courts decision to exclude evidence will 
 not be disturbed on appeal absent an abuse of discretion amounting to an error 
 of law.  Elledge v. Richland/Lexington Sch. Dist. Five, 341 S.C. 473, 
 477, 534 S.E.2d 289, 290 (Ct. App. 2000).  To warrant reversal on appeal, a 
 party must show both the error of the courts ruling and resulting prejudice.  
 Id.  Determination of the relevancy of a photograph as evidence is a 
 matter largely within the trial courts discretion.  Ward v. Epting, 
 290 S.C. 547, 556, 351 S.E.2d 867, 873 (Ct. App. 1986) (citing Elliott v. 
 Black River Elec. Coop., 233 S.C. 233, 259, 104 S.E.2d 357, 370 (1958)).
Evidence of similar accidents, transactions, or 
 happenings is admissible where there is some special relationship between them 
 tending to prove or disprove some fact in dispute. JKT Co. v. Hardwick, 
 274 S.C. 413, 416, 265 S.E.2d 510, 512 (1980).  
Prior to this project and litigation, Subcontractor 
 painted a Wal-Mart.  Contractor attempted to introduce photographs of the Wal-Mart 
 to prove the standards for wall preparation acceptable to Subcontractor. However, 
 the Contractor failed to present evidence establishing a relationship between 
 the Wal-Mart job and the School job.  Furthermore, there was no foundation from 
 which a reasonable comparison could be made between the two jobs.  The Contractor 
 presented no evidence demonstrating the contracts, specifications, or standards 
 for the work at the Wal-Mart were similar to the School.  Based on the lack 
 of foundation, the master excluded the photographs, ruling Contractor failed 
 to prove the photographs were relevant.  Given the lack of foundation for this 
 evidence, we find no abuse of discretion in this ruling. 

 IV.           Liability 
 of Subcontractor and its Predecessor

Lastly, Contractor argues the Master erred in failing to find the partners 
 in Subcontractors predecessor individually liable.  We need not reach this 
 issue because the Master did not impose liability on Subcontractor.  
B.          Subcontractors Issues on Appeal

 I.                  
 Attorneys Fees

Subcontractor argues the master erred by denying its 
 claim for attorneys fees because USF&G failed to conduct a reasonable investigation 
 as required by South Carolina Code Annotated section 27-1-15.  We disagree.  

A bond action 
 is an action at law.   Anderson v. Aetna Cas. & Surety Co., 175 S.C. 
 254, __, 178 S.E.2d 819, 826 (1934). In an action at law, tried without a jury, 
 a judges findings of fact will not be disturbed unless found to be without 
 evidence.  Republic, 314 S.C. at 110, 441 S.E.2d at 829.
Section 27-1-15 states, 

Whenever a contractor . . . has expended labor, services, 
 or materials under a contract for the improvement of real property . . . and 
 just demand has been made . . . under the terms of any regulation, undertaking, 
 or statute, it is the duty of the person upon whom the claim is made to make 
 a reasonable and fair investigation of the merits of the claim . . . 
 . If the person fails to make a fair investigation . . . he is liable for reasonable 
 attorneys fees and interest . . . . 

(emphasis added).
A party seeking attorneys fees under 
 section 27-1-15 has the burden of presenting prima facie evidence demonstrating 
 the surety failed to make a fair and reasonable investigation.  Moore Electric 
 Supply Company, Inc. v. Ward, 316 S.C. 367, 374, 450 S.E.2d 96, 100 (Ct. 
 App. 1994).
Evidence demonstrating a principal presented 
 a surety with a viable defense for non-payment is sufficient to support a finding 
 of a fair and reasonable investigation pursuant to section 27-1-15.  Id. 
 at 375, 450 S.E.2d at 100.
USF&G was Contractors surety for 
 the construction project.  Subcontractor notified USF&G of its claim for 
 payment.  USF&G conducted an investigation by discussing the claim with 
 representatives of Contractor. Contractor informed USF&G that Contractor 
 did not pay Subcontractor because Subcontractor did not complete the project.  
 USF&G did not interview the project architect or any employee of Subcontractor.  
 Based on this information, USF&G denied Subcontractors claim.
Subcontractor argues it established a prima facie 
 case pursuant to Moore, demonstrating USF&G failed to conduct a fair 
 and reasonable investigation because it failed to interview employees of Subcontractor 
 or the project architect.  Therefore, Subcontractor argues the burden shifted 
 to USF&G, and USF&G failed to demonstrate it conducted a fair and reasonable 
 investigation because it failed to present any evidence of an investigation.  

Assuming Subcontractor established a prima facie 
 case, this argument is still without merit.  Subcontractor presented USF&G 
 with a claim for payment.  USF&G interviewed Contractor, which remained 
 in charge of the project.  Contractor claimed Subcontractor had been terminated 
 based upon its failure to perform the subcontract.  Clearly, even under Subcontractors 
 view of the facts, the painting had not been completed.  Furthermore, the degree 
 of wall preparation necessary to meet the contract specifications, as well as 
 the timeliness of the work and adequacy of Subcontractors painting crew, was 
 factually disputed throughout the trial.
Based upon this evidence, the master determined Contractor 
 had a viable defense to Subcontractors claim and this evidence formed the basis 
 of USF&Gs refusal to pay Subcontractors claim.  Even though the master 
 ultimately decided these issues adversely to Contractor, the master concluded 
 USF&Gs decision to deny the claim after an investigation limited to interviews 
 with its insured was not unreasonable under these circumstances.  Given our 
 limited scope of review, we conclude the evidence is sufficient to support the 
 masters conclusion.

 II.              
 Cost of Paint Supplies 

Subcontractor next argues the master erred in ruling 
 it was not entitled to recover the cost of paint supplies purchased for the 
 school project because it failed to mitigate its damages.  We disagree.
An injured party is required to do that which an 
 ordinary, prudent person would do under similar circumstances to mitigate his 
 damages.  See DuBose v. Bultman, 215 S.C. 468, 471, 56 S.E.2d 
 95, 96 (1949). 
Following Subcontractors termination, Subcontractor 
 still possessed surplus paint. The paint was made especially for the project.  
 Subcontractor did not attempt to sell the paint, nor did it offer to sell it 
 to Contractor to complete the project.  Instead, the Subcontractor paid $800.00 
 to have a service dispose of the surplus paint without attempting to sell it.  

We conclude the Subcontractors failure to market the 
 paint to third parties or to Contractor is sufficient evidence to support the 
 Masters conclusion that Subcontractor failed to mitigate its damages.  Therefore, 
 we find no abuse of discretion.
CONCLUSION
Based on the foregoing reasons, the decision of the 
 master is 
AFFIRMED.
Hearn, C.J., Goolsby, and Howard, JJ., 
 concur.

 
 
 [1] Point-up work is the preparation of the walls to receive paint.  
 It includes filling the holes, removing excess mortar, grinding the joints, 
 and pointing up chipped and broken corners.

 
 
 [2] Contractor also argues the master erred when it:  (1) found Subcontractor 
 was justified in abandoning its work because the subcontract did not allow 
 for abandonment; 2) found Contractor breached the agreement by terminating 
 Subcontractor; (3) failed to award attorneys fees to Contractor because the 
 subcontract entitled Subcontractor to such fees; and (4) found Contractor 
 was justified in abandoning the job.  However, these arguments assume the 
 subcontract was the agreement between the parties.  Because we hold sufficient 
 evidence exists to find no subcontract existed between Subcontractor and Contractor, 
 we need not address these issues.